## STRICKLAND *v.* THE STATE.

1. If one voluntarily becomes intoxicated by the use of a drug, this will not excuse him for the commission of a crime. But if mania or insanity, though caused by the use of a drug, be permanent and fixed in character, so as to destroy the knowledge of right and wrong as to the act, the person laboring under such infirmity will not be responsible.
2. It was not relevant for the State's counsel to ask an expert witness for the accused whether, in his opinion, a physician who treated the accused for insanity at an asylum and cured him could tell what produced it, unless the evidence of the physician effecting the cure was introduced.
(a) The admission of such statement in evidence could not have affected the verdict, and furnishes no cause for a reversal.
3. Conversations of the accused and another person, some days before the commission of the homicide, in which the former expressed angry and threatening sentiments toward the decedent, were admissible to show the state of mind of the accused toward the person whom he killed. There was no error in admitting in evidence the parts of the conversations which rendered the sayings of the accused intelligible and showed the circumstances under which they were made.
4. Where, on the trial of a person indicted for murder, the issue was one of sanity or insanity, and the sheriff of the county testified that on the day when the decedent died, and the day after he was shot, the accused was placed in the charge of the witness and so remained in jail for two or three months, and that during such time the witness had conversations with the accused and observed him constantly with a view of ascertaining and determining his mental condition, and that from this

the witness was in a position to give his opinion on the subject, the opinion of the witness, based on such facts, that the accused was insane during his incarceration, was admissible.

5. Omitting cases of delusional insanity, where the question is one of general insanity, the test of criminal responsibility is whether the accused had sufficient reason to distinguish between right and wrong as to the act about to be committed.

(*a*) A very thorough investigation as to the conduct and condition of the accused before, at the time of, and after the commission of the homicide having been had, and the witness mentioned in the fourth headnote having given no facts from which irresponsibility for crime could be inferred, the rejection of his mere general opinion that the accused was insane while in jail will not, under the evidence, require a reversal.

6. The evidence sustained the verdict, and there was no error in overruling the motion for a new trial.

NOVEMBER 15, 1911.

Indictment for murder. Before Judge Conyers. Jeff Davis superior court. July 22, 1911.

*J. Mark Wilcox* and *W. W. Bennett,* for plaintiff in error.

*T. S. Felder, attorney-general,* and *J. H. Thomas, solicitor-general,* contra.

LUMPKIN, J. Strickland was convicted of murder, and sentenced to imprisonment for life. He moved for a new trial. The motion was overruled, and he excepted.

1. Voluntary drunkenness furnishes no excuse for crime. Penal Code (1910), § 39. The mere dulling of the sensibilities, excitement or temporary frenzy of the drunken man, brought about by his voluntary act, will not excuse him. But if mania or insanity, "though produced by drunkenness, be permanent and fixed, so as to destroy all knowledge of right and wrong, then the person thus laboring under these infirmities would not be responsible." *Beck* v. *State,* 76 *Ga.* 452, 470. Whether one voluntarily intoxicates himself with alcoholic liquor or with a drug would make no difference in principle. The charge of the judge was substantially to this effect, and there was sufficient evidence to authorize it.

2, 3. The headnotes sufficiently state the rulings.

4, 5. The defendant introduced the sheriff as a witness. As set out in the motion for a new trial, he testified: that on Sunday after the homicide (the decedent having been shot on Saturday afternoon, and having died on Sunday morning) the defendant was placed in his charge as a prisoner, and so remained for two or three months, and was kept in jail by him; that during that time the wit-

ness had frequent conversations with and constantly observed the defendant with a view of ascertaining and determining the mental condition of the latter; and that from these observations and conversations he was in a position to give his opinion on that subject. The court refused to let him give his opinion. Counsel for defendant stated that he expected to prove by the witness that in his opinion the defendant was insane, and that such was his condition on the day after .the homicide. Sanity or insanity is a proper subject for opinion evidence. In such a case "any witness may swear to his opinion or belief, giving his reasons therefor." Code (1910), § 5874. An expert witness may base his opinion on any hypothetical statement of facts, and may state his opinion without giving reasons. That the statement of facts or reasons given by the sheriff as a basis for his opinion as a non-expert witness was sufficient to authorize the admission of such opinion is decided by former rulings of this court. *Withrow* v. *State,* 136 *Ga.* 337 (71 S. E. 139); *Potts* v. *House,* 6 *Ga.* 324 (4), 336 et seq. (50 Am. D. 329); *Choice* v. *State,* 31 *Ga.* 424, 465-6; *Central R. &c. Co.* v. *Kelly,* 58 *Ga.* 107, 111; *Taylor* v. *State,* 83 *Ga.* 647 (10 S. E. 442); *Herndon* v. *State,* 111 *Ga.* 178 (36 S. E. 634).

In *Bowden* v. *Achor,* 95 *Ga* 245 (22 S. E. 254), the abstract rule was announced that it is not admissible for a witness who is not an expert in such matters to testify to his opinion with reference to the mental capacity of another, without stating the facts upon which that opinion is based. No application of it was made, nor was it declared what was a sufficient statement of reasons to furnish a basis for admitting the opinion of a non-expert. In *Welch* v. *Stipe,* 95 *Ga.* 762 (22 S. E. 670), the rule was again announced, and its application carried quite far, under the facts of the case. It was held that a mother could not testify that her deceased daughter was of unsound mind, although it appeared that the two had lived together during the entire lifetime of the daughter, about forty years, "the mother herself not giving any reason whatever arising from their relationship or the long association between them, or stating any fact upon which her opinion as to the daughter's mental condition was based." In the opinion it was said that if the witness had detailed any of the peculiarities mental or otherwise, and based the opinion which she did express upon such observation, it would have been admissible; and that if, without this, "she had stated the fact of such association, and distinctly

referred her opinion to that for its basis, by saying that it was her opinion, derived from such association, that her daughter was of unsound mind, such opinion might have been competent." In *Graham* v. *State,* 102 *Ga.* 650 (29 S. E. 582), an extraordinary motion for a new trial was made on the ground of newly discovered evidence set forth in an affidavit stating, that the accused "is of unsound mind;" that he was easily excited, and, when under such excitement, the witness "would not consider him responsible for his actions." The statement that the accused "is" of unsound mind was considered as referring to the time when the affidavit was made; the opinion of the witness that the accused was not "responsible for his acts" was held inadmissible; and the general opinion that the accused was of unsound mind was then considered on the assumption that it referred to the time of the homicide. It was said arguendo that this would not have been admissible in evidence without the reasons on which it was based; and finally it was held that if such opinion would have been admissible in evidence, it was not of such weight as to require the grant of the extraordinary motion for a new trial.

These decisions, when considered in connection with the facts on which they were based and the exact points ruled, do not furnish any conflict with the decisions cited in support of the ruling now made.

We hold that the sheriff's opinion was admissible in evidence. The opinion of a competent witness that the accused person is insane—of unsound mind—is admissible, along with the other evidence, in determining whether the insanity reaches the point of legal irresponsibility. Under the facts of this case, however, we do not think the exclusion of this evidence requires a new trial. Omitting cases of paranoia or delusional insanity, and dealing with general insanity, the test of criminal responsibility established in this State is whether the person had sufficient reason to distinguish between right and wrong, in relation to a particular act about to be committed. *Roberts* v. *State,* 3 *Ga.* 310; *Carr* v. *State,* 96 *Ga.* 285 (2), (22 S. E. 570); *Flanagan* v. *State,* 103 *Ga.* 619, 625 (30 S. E. 550); *Taylor* v. *State,* 105 *Ga.* 746, 775 (31 S. E. 764). Here a number of witnesses were examined as to the acts and conduct of the accused and his condition at the time of, before, and after the homicide. Physicians who examined him while in jail and the officer who arrested him were introduced on behalf of the accused. A

very full examination of the question of insanity was had. While there was evidence tending to show unsoundness of mind, the jury did not believe it showed the accused to have been incapable of distinguishing right from wrong as to the act which he committed, at the time of its commission. We think their finding was warranted. The sheriff detailed no facts showing an inability to distinguish between right and wrong. His mere general opinion that the accused was insane while in jail, not even going to the extent of giving an opinion that the accused could not distinguish right from wrong, could hardly have changed the verdict. In view of the entire evidence, this ruling does not require a reversal.

6. Nothing in the motion required a new trial.

*Judgment affirmed. All the Justices concur, except Beck, J., absent, and Hill, J., not presiding.*