## 25489. MOORE *v.* THE STATE.

DECIDED SEPTEMBER 15, 1936.

*C. G. Battle,* for plaintiff in error.

*John S. McClelland, solicitor, John A. Boykin, solicitor-general, Quincy O. Arnold, I. Leonard Crawford,* contra.

MACINTYRE, J. The exception is to the overruling of a certiorari after a conviction in the criminal court of Fulton County. The questions for determination are whether certain demurrers to the indictment were properly overruled, and whether the evidence supports the general judgment of guilty. The indictment contains two counts; the first charging that on December 13, 1934, in Fulton County, Georgia, R. P. Moore, Annie Moore, Bob Cameron, T. F. Wilson, and Carl Pore "did unlawfully keep, maintain, employ, and carry on a lottery, the same being a scheme and device for the hazarding of money by selling tickets which represented chances on prizes in said lottery known and designated as the

number game;" and the second count charging that the same parties, on the same day and in the same county, "did unlawfully sell and furnish to persons whose names are to the grand jurors unknown, for a valuable consideration, tickets, numbers, and combinations which represented chances in a lottery, which was a scheme and device for the hazarding of money, said lottery being known and designated as the number game." Count 1 of the indictment was demurred to, "because said count fails to inform this defendant with sufficient certainty what the alleged scheme was, what device was used, or what hazard, if any, was taken by any person or persons who may have taken part therein;" because "said count nowhere sets out a copy of the·ticket or tickets which are alleged to have been sold by this defendant, and which represented the chances on said alleged prizes;" and "because said count fails to charge what constituted the prize, or prizes, the tickets represented, . . what the number game was." The material part of the demurrer to count 2 is: "That said count . . is insufficient in law to constitute a valid and legal indictment, . . because said count fails to inform this defendant with sufficient certainty what the alleged scheme was, what device was used, or what hazard, if any, was taken by any person or persons who may have taken part therein."

"Every indictment or accusation . . shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may easily be understood by the jury. . . " Code, § 27-701. "The section has been often construed. It was not intended to dispense with the substance of good pleading, and there are many charges where the offense can not be described in the terms and language of the Code, and such cases are covered by the additional words, 'so plainly that the nature of the offense charged may be easily understood by the jury.' It means that an indictment conforming substantially to its requirements will be sufficient, but it is not designed to deny to one accused of crime the right to know enough of the particular facts constituting the alleged offense to be able to prepare for trial." *Amorous* v. *State,* 1 *Ga. App.* 313, 315 (57 S. E. 999). In *Locke* v. *State,* 3 *Ga.* 534, 540, Judge Nisbet, speaking for the Supreme Court, said: "The requirement of the statute is, that the offense must be so *plainly*

stated that the juryman may *easily* understand its nature. Our construction of this statute is, that the indictment should leave nothing to inference or implication; but that its statement should be so plain that a common man may without doubt or difficulty, from the language used, know what is the charge made against the accused." In *Johnson* v. *State,* 90 *Ga.* 441 (16 S. E. 92), Justice Lumpkin, speaking for a united court, followed the *Locke* case. See also *Burkes* v. *State,* 7 *Ga. App.* 39 (65 S. E. 1091). In *Woody* v. *State,* 113 *Ga.* 927 (2) (39 S. E. 297), it was said: "An accusation for gaming 'with cards and dice' need not more particularly than as indicated by the words quoted describe 'the game played or the manner of playing same.' " In that decision, the court said: "It was not essential that the accusation should minutely describe the games played or the manner of playing them." In *Kolshorn* v. *State,* 97 *Ga.* 343 (23 S. E. 829), the Supreme Court held: "An indictment which charged that the accused 'did unlawfully keep, maintain, employ, and carry on a certain scheme and device for the hazarding of money or other valuable thing, said scheme and device being called and known as a nickel-in-the-slot machine,' was legally sufficient without specifying the manner in which the machine was operated." In so far as the demurrers to the first count of the indictment in the instant case are concerned, the ruling in the first headnote of *Guthas* v. *State,* 54 *Ga. App.* 217 (187 S. E. 847), is controlling. Under the rulings in the foregoing cases, both counts of the indictment in the instant case are good in form and substance, and neither count was subject to the demurrers.

A "number game" has been fully described in *Cutcliff* v. *State,* 51 *Ga. App.* 40 (179 S. E. 568), and other cases, and we deem it unnecessary to set out at length the evidence describing it in the instant case. We will state somewhat generally, however, that on December 13, 1934, about three o'clock in the afternoon, several officers of the City of Atlanta found in a room in said city all the paraphernalia used in the operation of the headquarters of a "number game," and that in that room were the persons indicted in this case. One thousand yellow "tickets," such as were sent in to headquarters, with figures in various handwriting, and bearing the date "12-13-34," were found in said room. The stock market had been closed only about an hour, and it was the time for ascertain-

ing who were the winners for the day. W. J. Anderson testified, in part: "There is a printing-shop at 23 Fourth Street N. W., and in the back of the shop there the defendant and Carl Moore and Dick Wilson and Mrs. Moore were back there with the adding machine on the table. As we went in Mrs. Moore ran out a little door. I met her, and when I caught her and went back in the place, they were all around the table checking up. . . That was not a bedroom . . ; it was back of the printing-shop. It was a separate room from the printing-shop. I don't know who operated the printing-shop. All these defendants were around the table. . . I found on this table and on the floor these lottery tickets we have here. They are original yellow tickets sent in to headquarters for the purpose of checking up on the winning numbers and checking the sales. . . I knew they were in the business. In the operation of a lottery it is necessary to use adding-machines, and I found on this occasion in there this Victor electric adding-machine. . . The arrest was made at 3:15 o'clock. At that hour, from an examination of those ribbons, they had not completed checking up this batch of lottery tickets. They were not hardly half through. . . They were all around there and the adding-machine was in the socket." With the exception of Mrs. Moore, the parties mentioned in the indictment, other than the defendant, testified in substance that they had nothing whatever to do with any "number game." The defendant's statement was as follows: "I never sold any lottery tickets or number tickets, or offered any for sale. I was in this place and was arrested, and was responsible for it, but I had no intention of violating the law. These other people in there with me had no connection with me whatever. Neither did my wife; and we were not doing anything when these officers came in." Our view is that the jury was warranted in concluding that the defendant was guilty under both counts of the indictment. In this connection see *Thomas* v. *State*, 118 *Ga.* 774 (45 S. E. 622); *Hughes* v. *State*, 52 *Ga. App.* 199 (182 S. E. 807).

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*