28203.   KELLY *v.* THE STATE.

232

DECIDED JULY 16, 1940. REHEARING DENIED JULY 31, 1940.

S. W. Fariss, for plaintiff in error.

J. Ralph Rosser, solicitor-general, J. Sante Crawford, contra.

MacIntyre, J. The indictment in part charges the defendant, Gerald Kelly, with killing Sam Kreitman, "without any intention to do so, . . by driving and operating a certain automobile . . against and into and upon a certain automobile in which

the said Sam Kreitman was then and there an occupant, the said accused driving and operating the aforesaid automobile . . at a greater rate of speed than fifty-five miles per hour, and while accused thus operating the aforesaid automobile in said unlawful manner, and at a high and reckless and dangerous rate of speed, and in total disregard of all other persons then and there upon the highway, did drive said automobile, . . leaving his, the accused's right-hand side of said highway, . . upon and against the automobile in which the said Sam Kreitman was then and there an occupant, said automobile in which said Sam Kreitman was then and there an occupant having been brought to a complete standstill on his own right-hand side of the LaFayette-Chattanooga Highway, . . and being at a complete standstill at the time the accused did drive and operate his said automobile over, against, and into the automobile in which the said Sam Kreitman was then and there an occupant, thereby inflicting upon him, the said Sam Kreitman, certain mortal wound and wounds upon his head, body, and members thereof, from which he, the said Kreitman, died; and the acts of the accused here complained of constituted the offense of involuntary manslaughter, and were and are contrary to the laws of said State."

■ The first ground of demurrer complains that the indictment is based on the Code, § 68-305, and that so much thereof as undertakes to make penal certain acts is vague and indefinite and is incapable of enforcement. Counsel cites *Hale* v. *State,* 21 *Ga. App.* 658 (94 S. E. 823), and *Heath* v. *State,* 36 *Ga. App.* 206 (136 S. E. 284), in support of this contention. The second ground complains that it is not alleged that the acts set forth therein (the way, manner, and fashion in which the defendant operated the car) were unlawful acts, or were lawful acts in an unlawful manner which probably might produce the death of Sam Kreitman. The defendant contends that the indictment must state the offense in the terms and language of the Code, or so plainly that the nature of the offense may be easily understood; citing *Moore* v. *State,* 54 *Ga. App.* 218 (187 S. E. 595), and other similar cases. The indictment charges involuntary manslaughter, and is drawn under the Code, § 26-1009, which defines the crime of involuntary manslaughter. The indictment charges the commission of two separate acts contrary to the laws of this State. The laws of the road

234

alleged to have been violated are stated in § 68-301, which sets the maximum speed limit for the type vehicle the defendant was driving at 55 miles per hour, and § 68-303(c), which supersedes the provisions of § 68-305, and governs the operation of automobiles on public highways. *Seaboard Air-Line Railway Co.* v. *Benton,* 43 *Ga. App.* 495 (12), 502 (159 S. E. 717); *Brinkman* v. *Atlantic Coast Line Railroad Co.,* 48 *Ga. App.* 121 (172 S. E. 113). The decisions relied on by the defendant are therefore not applicable. The Code, § 68-303(c), declares that "An operator meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center on the highway, so as to pass without interference." This court held in *Lester* v. *State,* 51 *Ga. App.* 146 (179 S. E. 869), and *Ray* v. *State,* 47 *Ga. App.* 22, 24 (169 S. E. 538), that that part of § 68-303(d) which provides that the way ahead is "clear of approaching traffic" is not so vague and indefinite as to invalidate the statute. The act of 1927 (Code, § 68-303(c), does not contain the statements "if practicable" and "a fair opportunity to pass," which might call for conclusions and be the subject of "idiosyncrasies of a jury." *Ray* v. *State,* supra. Therefore we think that the statute in question, requiring one meeting another coming in the opposite direction to keep to the right of the center on the highway "so as to pass without interference," is sufficiently definite.

Nor is the indictment subject to the second ground of the demurrer. The part of the indictment so complained of is in effect in the language of the indictment approved of by this court in *Hawkins* v. *State,* 58 *Ga. App.* 386 (198 S. E. 551). Although one automobile is stopped, yet they are meeting each other in the sense of the Code, § 68-303(c). See *Roberts* v. *Phillips,* 35 *Ga. App.* 743 (11) (134 S. E. 837). The indictment charged the unintentional killing of a human being in the commission of certain unlawful acts, to wit, exceeding the speed limit of 55 miles per hour, and driving on the wrong side of the road. This was sufficient. *Passley* v. *State,* 62 *Ga. App.* 88 (8 S. E. 2d, 131).

■ The jury, after having retired to consider the case, returned the following verdict: "We, the jury, find the defendant guilty of misdemeanor." The court then asked counsel for the defendant if he was satisfied with the verdict, and counsel replied: "I don't know that I understand." Thereupon the court recharged the jury

as follows: "Gentlemen of the jury, if you meant by your finding to find the defendant guilty of involuntary manslaughter in the commission of a lawful act without due care and caution, I charge you that if you so find, he would be guilty of a misdemeanor. If you so meant, I will ask you to so state by your verdict. The only charge the court gave you as to that, if you find the defendant guilty of involuntary manslaughter in the commission of a lawful act, that would be a misdemeanor. Is that what you intended to do, gentlemen?" The foreman of the jury answered, "Yes, sir." Whereupon the court further instructed as follows: "Give the jury the indictment. Return to your jury-room, gentlemen; and if the jury agree that was the purpose of your finding, then the form of your verdict would be, 'We, the jury, find the defendant guilty of involuntary manslaughter in the commission of a lawful act without due care and caution.' That would be a misdemeanor." The jury returned to the jury-room, and returned this verdict: "We, the jury, find the defendant guilty of involuntary manslaughter in the commission of a lawful act in a careless way." Counsel for the defendant objected to the verdict being returned in that form, on the ground that it was unsupported by the indictment or any law, and was not understandable. The court overruled the objection, and the defendant excepted. He contends, that to recharge as the court did was an expression of an opinion that the defendant was guilty of involuntary manslaughter in the commission of a lawful act without due care and caution; that it authorized a conviction of an offense not charged in the indictment, injected into the case elements not charged in the indictment, and of which the defendant had had no previous notice and no opportunity to prepare any defense to such charge; and that the verdict is "meaningless, contradictory, and inconsistent."

It has been held that where one is charged solely with the offense of involuntary manslaughter in the commission of certain specified unlawful acts, a conviction of involuntary manslaughter in the commission of a lawful act is entirely without authority of law. In Hampton v. State, 92 Tex. Cr. 441 (244 S. W. 525), it was said that neither of the offenses seems to include the other; that the distinction between them is fundamentally different; and that, there being no pleading to justify the submission of involuntary manslaughter in the commission of a lawful act, the trial court com-

mitted reversible error in submitting such offense to the jury. See *Jones* v. *State,* 147 *Ga.* 356 (94 S. E. 248). However, in Georgia, where the indictment charges an offense (involuntary manslaughter in the commission of an unlawful act), in order to convict of a lesser offense (involuntary manslaughter in the commission of a lawful act, which might produce such a consequence, in an unlawful manner) "the lesser offense must either necessarily be included in a general charge of the greater, or, if it may or may not be, then the averments of the indictment describing the manner in which the greater offense was committed must contain allegations essential to constitute a charge of the lesser." *Watson* v. *State,* 116 *Ga.* 607 (3) (43 S. E. 32, 21 L. R. A. (N. S.) 1) ; *Reams* v. *State,* 24 *Ga. App.* 135 (100 S. E. 230) ; *Cambron* v. *State,* 36 *Ga. App.* 784 (138 S. E. 280). The offense of involuntary manslaughter in the commission of a lawful act, which might produce such a consequence, in an unlawful manner, though not included in the general charge of involuntary manslaughter in the commission of an unlawful act, was, we think, sufficiently charged in the allegations of the present indictment describing the manner in which the greater offense (involuntary manslaughter in the commission of an unlawful act) was committed. The indictment, after charging the defendant with killing a named person, without any intention, by driving and operating a certain automobile over that person at a greater rate of speed than 55 miles per hour, further charged him with operating the automobile "in said unlawful manner, and at a high and reckless and dangerous rate of speed, and in total disregard of all other persons then and there upon said highway." Therefore it appears that the indictment contained all of the averments necessary to constitute the lower offense (involuntary manslaughter in the commission of a lawful act, etc.), and the judge did not err in charging the jury as he did, and in overruling the defendant's objection, and in receiving the verdict. This contention is not meritorious.

■ The defendant complains of the following excerpt of the judge's charge: "I charge you further, gentlemen, that the operator of a motor vehicle, meeting another vehicle coming from the opposite direction on the same highway, shall turn to the right of the center of the highway, so as to pass without interference." The defendant contends that there is no law in this State which

authorized or supported this charge, and if it is based on the motor-vehicle act of 1921, the law is too uncertain and indefinite in its terms to be capable of enforcement; and that the charge introduced into the case elements not alleged in the indictment, and was harmful and prejudicial to the defendant. The charge was amply authorized by the evidence, was in the language of the Code, § 68-303(c) (Ga. L. 1927, 236), and, as decided in division 1 of this opinion, was not too vague and indefinite in its terms to be capable of enforcement. This ground is without merit. See *Bell* v. *State*, 52 *Ga. App.* 249 (183 S. E. 93).

■ Complaint is made of the following excerpt from the judge's charge: "The defendant, gentlemen, is indicted under this section of our law, charging a violation of this statute: Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act which probably might produce such a consequence, in an unlawful manner. The defendant is charged with the offense of involuntary manslaughter in the commission of an unlawful act and the commission of involuntary manslaughter in the commission of a lawful act without due caution and circumspection." The defendant contends that there was no allegation in the indictment charging him with involuntary manslaughter in the commission of a lawful act without due caution and circumspection, which probably might produce such a consequence in an unlawful manner, and that "these charges were hurtful, harmful, and prejudicial to movant, because they injected criminal elements into the case which were not alleged in the indictment either directly or inferentially, and authorized a conviction of movant of an offense for which he had not been indicted." This contention is not meritorious. The indictment not only charged the defendant with driving the automobile at an unlawful rate of speed, to wit, greater than 55 miles per hour, but also charged him with driving the automobile "at a high and reckless and dangerous rate of speed and in total disregard of all other persons then and there upon said highway." Under what has been said in division 2 of this opinion, the *indictment* was amply sufficient to charge the defendant with involuntary manslaughter in the commission of an unlawful act and a lawful act without due caution and circumspection in an unlawful manner; and the judge did not, *for the reasons assigned,* err in charging on this subject.

238

■ The charge complained of in ground 3 contains correct principles of law applicable under the indictment and the evidence, and does not disclose reversible error.

■ Ground 4 complains that the judge erred in refusing a request to give the following in charge: "I charge you that under our law relating to the operation of motor vehicles, an emergency may arise in which failure to observe ordinary rule requiring driver of vehicle, when meeting another vehicle, to turn to the right, is not negligence, and I charge you that this rule would apply although such other vehicle might be standing still; and if you should find from the evidence in this case that the defendant did fail to turn his truck to the right, or failed to keep his truck on the right-hand side of the road, if you should find that in the operation of the truck he was acting under the stress of an emergency, and undertook to drive the truck to the left and behind such other vehicle, which the defendant believed was being turned to go into a driveway or road, and was thus endeavoring under the stress of emergency to avoid a collision, his act in turning the truck to the left would not be negligence, and would not be an unlawful act within the meaning of our law relating to involuntary manslaughter in the commission of an unlawful act." The defendant is not entitled to have the court adopt his own language in charging as requested. It appears from the record that the judge charged the jury in the language of the Code, § 26-404, as follows: "'A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears there was no evil design, or intention or culpable neglect.' So you will look to the evidence, gentlemen, in this case, and see as to what it discloses as to the truth of this transaction." Subsequently the judge charged: "And I charge you, whatever you may determine the facts and circumstances and all the surroundings of the transaction to be, if there was a collision, whether it was an accident, as the court has given you in charge, and in that way, gentlemen, determine what the truth of the transaction is or was." Then, after defining the offense of involuntary manslaughter in the commission of an unlawful act, and involuntary manslaughter in the commission of a lawful act which might produce such consequences in an unlawful manner, he charged: "Then, gentlemen, if you do not find the defendant guilty of either involuntary manslaughter in

the commission of an unlawful act, or guilty of involuntary man-slaughter in the commission of a lawful act without due care and caution, to the extent of gross neglect, or if you have a reasonable doubt of his guilt of that offense, it would be your duty to acquit him." Toward the end of his charge the judge, in giving to the jury the form of the verdict, charged: "If you should find further, gentlemen, the homicide was the consequence and result of misfortune or accident, and there was no evil design or intention, or culpable neglect, then it would be your duty, gentlemen of the jury, to give him the benefit of such and acquit him." We think that the charge as a whole covered plainly and in substance the principles of law stated in the request to charge. The language in the request, framed in argumentative form and emphasizing selected facts in the defendant's interest, was not entitled to be adopted by the court, and the failure to give the charge in the language requested was not reversible error. *Summers* v. *State,* 55 *Ga. App.* 185 (2) (189 S. E. 687) ; *Clark* v. *State,* 52 *Ga. App.* 61 (2), 63 (182 S. E. 195) ; *Goldsmith* v. *State,* 54 *Ga. App.* 268 (3), 272 (187 S. E. 694) ; *Southern Railway Co.* v. *Wilcox,* 59 *Ga. App.* 785, 790 (2 S. E. 2d, 225).

■ Ground 5 complains that the judge committed reversible error in failing to define the meaning of the word "accident," in a request to charge as follows: "I charge you that an accident is a mishap; something that happens undesignedly; a casualty." This ground is not meritorious. "Accident" is not a word which is probably not understood by a person unlearned in the law, but is a word of ordinary understanding and self-explanatory, and it is unnecessary, even upon request, to define or explain such a word. *Floyd* v. *State,* 58 *Ga. App.* 867, 871 (200 S. E. 207) ; Jackson *v.* State, 103 Tex. Cr. 252 (280 S. W. 808) ; 1 Reid's Branson on Instructions to Juries, 169, 171, § 55.

■ Ground 6: The court, after allowing a State's witness, on cross-examination, to state that she had a damage suit pending on account of the accident in question and "whether I win my civil suit for damages depends on whether I will be able to show negligence on the part of this defendant in operating his truck," refused to allow counsel for defendant to ask the witness: "And you are interested in the outcome of this case [defendant's trial] to that extent, aren't you?" Defendant contends, that such refusal deprived him

of a material and substantial element of defense, that of showing the State's witness's interest in the outcome of the case; that showing such interest attacked the credibility of such witness, and defendant was deprived of his right to a searching cross-examination. Grounds 7 and 8 likewise complain of the court's refusal to allow counsel for the defendant to ask certain State's witnesses certain questions on cross-examination with reference to their financial interest in the case, and the question: "How did it happen that you both agreed they were going 75 miles per hour?" It is the rule that in a prosecution of a criminal case it is reversible error, where the evidence is conflicting, to refuse to allow a State's witness on cross-examination to testify that he has pending a damage suit based upon the same state of facts involved in such criminal case. *Lloyd* v. *State,* 40 *Ga. App.* 230 (149 S. E. 174). See *Georgia Railway & Power Co.* v. *Shaw,* 25 *Ga. App.* 146 (2) (102 S. E. 904); *Duncan* v. *State,* 58 *Ga. App.* 551 (199 S. E. 319). And "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him." Code, § 38-1705. And "The state of the witness's feelings to the parties, and his relationship, may always be proved for the consideration of the jury." § 38-1712. However, the judge allowed the witnesses to testify that they had damage suits pending on account of the accident, and we do not think he abused his discretion in controlling the cross-examination in the manner shown in these grounds.

■ Chief Judge Broyles and Judge Gardner agree to the conclusions announced in divisions 1 to 8, inclusive of the opinion. However, as to the general grounds of the motion for new trial, the majority of the court are of the opinion that the evidence admits of either one of three verdicts: not guilty, guilty of involuntary manslaughter in the commission of an unlawful act, or guilty of involuntary manslaughter in the commission of a lawful act without due caution and circumspection. The jury reached the last-mentioned verdict. The defendant contends that under the evidence only one of two legal verdicts could be returned; that is, "not guilty," or "guilty of involuntary manslaughter in the commission of an unlawful act," and that the verdict of involuntary manslaughter in the commission of a lawful act without due caution and circumspection was unauthoried by the evidence. The majority of the court think that this contention is not meritorious.

The evidence from the record applicable to this issue is very limited in its scope, and we deem it prudent to quote here such excerpts as in our opinion amply support the verdict which the jury returned and which the court approved.

The sheriff, sworn for the State, testified: "If my recollection is right, the defendant's truck went forty-seven feet angling from where he put on his brakes; he got completely over on the west side of the road, which would have been his left-hand side. . . I measured the distance the truck traveled after it started towards this car, the measurement being forty-seven feet, that was after it crossed over the black line." Another witness for the State, who was operating the Ford car which collided with the defendant's truck, testified: "I saw this truck when it topped a little hill, and after it topped the hill he began coming over on my side of the road, and I stopped my car, and my car was stopped still when he hit me. . . He was driving at least seventy or seventy-five miles per hour, the truck was. . . At the time it looked to me like whoever was in the truck were either trying to change seats or get in the correct seat; in other words, they were not sitting just as they should have been sitting. They were moving around on the front seat, and while they were doing that was about the time they made a dive at me or at the car. I stopped my car when I saw they were going to hit me." On cross-examination this witness testified: "I couldn't say the boys were engaged in changing positions, but it looked like they were mixed up in some way; they were not as they should have been sitting in the seat, were not in their places." Another occupant of the Ford car, as a witness for the State, testified: "The truck was, I would say, one hundred and forty feet away, when I saw it coming over the hill. . . When the truck first came in sight, as to anybody on the front seat driving, it looked to me as though there was just one person; they were just jammed up, looked like just one person in the car. . . My mother did not turn the car towards any road, we were just driving straight."

The defendant introduced a witness who testified that she was at her home in the front yard, about fifty or sixty feet from the point of the collision; and further: "That truck was moving, I would say, not over twenty-five miles per hour, over that distance [of something like ten feet] before the collision occurred. . . When

I first saw it it did not look like it was angling across the road, but as I watched it it did turn to the left side of the road in the direction it was going, and the collision occurred on the left-hand side of the road the direction it was traveling. . . I have not had very much experience in riding in automobiles, and I can not very well estimate the speed of a moving automobile when I see it. I know when they are speeding and when they are not. The truck was not speeding when I saw it. There is a difference between the noise that a speeding truck will make just traveling along the road and a moderately driven truck. If that truck had driven there seventy to eighty miles per hour, that is what I would call speeding; and if it had been moving at that rate of speed, I think that would have attracted my attention and caused me to see it earlier than I did see it. The noise was not of a truck running so fast. The first I noticed was this noise that brakes were applied, with the wheels skidding, and then I looked and I saw it about ten feet, going at the rate of about twenty-five miles per hour. I have not any interest in this case one way or another. I was not acquainted with this defendant, and never heard of him before." Another witness for the defendant (who claimed to have been at the home of the witness who testified as just set out) testified: "I can not estimate to any extent the speed of a moving vehicle, I can't tell you how fast one runs. That truck I saw was not being operated at a rapid rate of speed, but just at a moderate speed, you know. As to my opinion about how fast it was being operated, to say, it was thirty to thirty-five miles, but that is all I would say. I don't know. It was not running very fast; that is one thing I can tell you; it was just moderate along."

Another witness for the defendant testified: "I was at the scene of the accident shortly after it happened. . . The truck that participated in the accident passed us on that little rise there, which to my estimation I imagine would be about a quarter of a mile from the place the accident occurred. . . Just in my estimation we were making about twenty-five, and Bowen was making twenty-five to thirty, to the best of my judgment, my opinion. He did not go by fast. . . After this truck passed us and went up the road it was traveling on the right-hand side. I didn't see it then until after it went on the wreck, and then it was the right-hand side when I saw it later. I would still believe it was operated at about the rate of speed I spoke of."

Another witness for the defendant, who was riding in the car with the witness immediately before the incident above quoted, testified: "This truck was being operated going twenty-five to thirty miles per hour; something along there. We were just poking along at about twenty-five miles per hour, I guess. . . The truck, after it passed us, was being operated on the right-hand side." A witness, who claimed to have been riding with the defendant at the time of the collision, testified: "Just before that accident occurred, Gerald was operating the truck thirty-five to forty miles per hour. Right before the accident, and before Gerald put his brakes on, I was looking in the seat sorting some records I was getting straightened out."

On this evidence the majority of the court is of the opinion that the jury were amply authorized to find that at the time of the occurrence in question the defendant was neither exceeding the lawful rate of speed nor was he across the center of the road to the left; that they were authorized to find under the evidence that at the time of the incident, and under the law governing it, the proximate cause of the homicide was the confusion of the operator and his companion in the front seat of the car; that this conduct on the part of the defendant, the driver, was not due caution and circumspection in the operation of the car, and was the proximate cause of the homicide (see Code, § 26-1009), although he was not violating either of the statutes embraced within the indictment; and that the passing of the car from the defendant's right to his left side of the road and the collision of the cars almost immediately thereafter were a part of the res gestæ of the transaction, and not the proximate cause of the homicide. Therefore the majority hold that the jury were authorized to render a verdict of involuntary manslaughter while in the commission of a lawful act without due caution and circumspection, and that the trial court did not err in refusing the motion for new trial. I can not agree to this conclusion as to the evidence. Speaking for myself, I do not think that the evidence authorized the verdict that the defendant was guilty of involuntary manslaughter while in the commission of a lawful act "which probably might produce such a consequence, in an unlawful manner." (Code, § 26-1009.) "A crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and inten-

tion, or criminal negligence." Code, § 26-201. However, when one knows the consequence of his act and does that act, he is presumed to intend the natural and necessary consequences of that act. *Darr* v. *State, 44 Ga. App.* 201 (2) (160 S. E. 824). One is charged with knowledge, actual or imputed, of the probable consequences of his act, whether that act be unlawful or lawful; and even though the act be negligent, yet it is not criminal until and unless the defendant intentionally (which must at least be gross negligence) or wantonly commits the act knowing actually or imputedly that its probable consequence will result in the death of or injury to another. "'Ordinary negligence is based on the theory that a person charged with negligent conduct should have known the probable consequences of his act; culpable negligence rests on the assumption that he knew the probable consequences but was intentionally, recklessly [which must at least be gross negligence], or wantonly indifferent to the results.'" *Cain* v. *State, 55 Ga. App.* 376, 380 (190 S. E. 371). "In the zone between these two extremes—misadventure or mere civil liability, on the one hand, and carelessness so gross and wanton as to import malice, on the other —the killing of a human being by culpable negligence is manslaughter. The fundamental requirement fixing criminal responsibility is knowledge, actual or imputed, that the act of the slayer tended to endanger life" (99 A. L. R. 830), that is, was dangerous under the attendant circumstances. *Cain* v. *State,* supra; *Croker* v. *State, 57 Ga. App.* 895, 900 (197 S. E. 92) ; *Cammons* v. *State, 59 Ga. App.* 759, 766 (2 S. E. 2d, 205) ; *Foy* v. *State, 40 Ga. App.* 617, 620 (150 S. E. 917).

In the instant case the verdict was for involuntary manslaughter in the commission of a lawful act in an unlawful manner. Our Code, § 26-1009, declares: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner : Provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder." And if the lawful act, which the State

contends was one done in an unlawful manner, be a negligent act, in order for it to become a criminally negligent act, it must meet the requirement that the defendant had knowledge, actual or imputed (that is, he actually knew or should have known), that the probable consequences of the act under the attendant circumstances, done as he did it, would have made it a dangerous act, and was indifferent to the result. The State's evidence would have authorized a verdict that the defendant violated, intentionally, wilfully, or wantonly, the motor-vehicle penal statute enacted for the protection of human life and limb, which violation proximately resulted in death, in that he exceeded the legal rate of speed, 55 miles per hour, and was driving on the wrong side of the road while meeting an approaching automobile. The defendant's evidence and his statement to the jury would have authorized a finding that he was not exceeding the speed limit as fixed by statute, and that his being on the left side of the road at the time of the accident was an inadvertent or unintentional violation of the penal automobile statute, in that he was forced on the wrong side of the road by the other automobile, and that the force of these circumstances had placed him in the position that resulted in another's death (Austin v. State, 101 Fla. 990, 132 So. 491), and thus his being on the left side of the road was not unlawful as being a criminal violation of the statute; and his evidence further authorized a finding that his being on this side of the road was not accompanied by recklessness which amounted to criminal negligence. The place where the collision occurred was merely a country road along which were scattered houses and possibly a filling-station now and then; and I do not think the evidence for the State or for the defendant disclosed any circumstances which would require the defendant, in driving along this road and meeting another automobile approaching him under normal conditions, to run his car at a rate of speed less than 55 miles per hour, which is the maximum legal rate of speed as provided by statute. An automobile driver's mere error in judgment, or loss of presence of mind, does not indicate such indifference to consequences as would authorize a finding of criminal negligence. *Tucker* v. *Andrews*, 51 *Ga. App.* 841, 846 (181 S. E. 673).

The evidence for the defendant was that he was forced on the left side of the road by the driver of the other automobile, or, at most, that it was a lack of judgment or the loss of his presence of

mind in an emergency that caused him to be there; and such evidence would have authorized his acquittal. Under our statute defining manslaughter in the commission of an unlawful act, the unlawful acts referred to therein are only such acts as are prohibited by some valid law of the State. *Hayes* v. *State,* 11 *Ga. App.* 371 (75 S. E. 523). Under our automobile penal statute, it is a violation of the law to drive an automobile in excess of 55 miles per hour, and it is also a violation of said statute for the operator of a motor vehicle, when meeting another vehicle coming in the opposite direction, to fail to turn to the right of the center of the highway, so as to pass without interference. Therefore the jury in this case, by their verdict that the defendant was guilty of involuntary manslaughter in the commission of a lawful act in an unlawful manner, said that the automobile penal statute had not been violated, but on the contrary said that the defendant ran said automobile, even though not in violation of the statute, in so reckless a manner as to show a heedless indifference to the rights and safety of others, and reasonably foresaw that injury would result. In so far as the defendant's evidence and statement are concerned, the crucial point in the case, at most, was the defendant's error in judgment or loss of presence of mind; as it can not be held that the speed of the truck under his evidence was excessive under the circumstances, nor were there any other acts of the defendant which in themselves constituted criminal negligence. The only evidence, outside the evidence of *the unlawful acts* of the defendant in driving the truck, that the State produced for the purpose of showing criminal negligence was the testimony of Mrs. V. M. Hundley, who was driving the car in which the deceased was riding. She testified, on direct examination: "I saw this truck when it topped a little hill, and after he topped the hill he began coming over on my side of the road, and I stopped my car, and my car was stopped still when he hit me. . . At the time it looked to me like whoever was in the truck were either trying to change seats or get in the correct seat; in other words they were not sitting just as they should have been sitting. They were moving around on the front seat; and while they were doing that was about the time they made a dive at me or at the car." However, on cross-examination, she testified: "I couldn't say the boys were engaged in changing positions, but

it looked like they were mixed up in some way; they were not as they should have been sitting in the seat, were not in their places." Miss Wanda Hundley, age fifteen, who was riding in the middle on the back seat, in effect testified the same as Mrs. Hundley, her mother. This testimony did not establish the fact beyond a reasonable doubt that the defendant was negligent relatively to his relationship with the boy on the front seat with him at the time in question. In fact the testimony of Mrs. Hundley and Wanda Hundley was vague, indefinite, and uncertain on this point. The direct and positive testimony of the boy, Bowen (who of course had a better opportunity to observe), that immediately before the accident he was busy "looking in the seat, sorting some records I was straightening out," and when he felt the defendant suddenly put on the brakes he raised up immediately and saw the other automobile for the first time, is not inconsistent with the testimony of Mrs. Hundley and her daughter, that *it looked like* they were mixed up in some way; they were not as they should have been sitting in the seat, were not in their places." (Italics mine.)

The indictment in this case was for involuntary manslaughter. The evidence for the State would have authorized a verdict finding the defendant guilty of involuntary manslaughter in the commission of an unlawful act, and the evidence for the defendant would have authorized an acquittal; but I do not think that the evidence, both for the State and the defendant, and the defendant's statement to the jury, authorized a verdict of involuntary manslaughter in the commission of a lawful act in an unlawful manner. I think the case should be tried again. My two associates think otherwise.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur. MacIntyre, J., dissents from division 9 of the opinion only.*