## 64919. CHANCELLOR v. THE STATE.

SHULMAN, Chief Judge.

Appellant was tried for the murder of her husband's paramour and was found guilty of voluntary manslaughter. Asserting 55 enumerations of error, she now appeals from the judgment entered on that verdict. We affirm.

1. The bulk of appellant's enumerations are concerned with the content of the trial court's instructions to the jury. Appellant uses 13 enumerations of error alone to impress upon this court the trial court's failure to charge the jury on the law of justification. We agree with the trial court's decision that none of appellant's requested charges on justification was authorized by the evidence.

Contrary to appellant's repeated assertion, the slaying of an illicit lover by a wronged spouse in order to prevent adultery is *not* justifiable homicide. The Supreme Court has clearly stated that "so much of our state's current decisional law as allows a spouse to kill the illicit lover, we also reject . . . [A]ny idea that a spouse is ever justified in taking the life of another — adulterous spouse *or* illicit lover — to prevent adultery is uncivilized. This is murder; and henceforth, nothing more appearing, an instruction on justifiable homicide may not be given." *Burger v. State,* 238 Ga. 171 (1) (231 SE2d 769). The trial court correctly refused to give the jury instructions which were diametrically opposed to the position announced by the Supreme Court in *Burger.* Furthermore, it was not error for the trial court to inform the jury that a person was *not* justified in taking the life of a spouse's lover in order to prevent adultery. Id.

2. Reasoning that the decedent had intentionally inflicted great mental or emotional distress or injury on appellant by having an affair with appellant's husband, appellant sought a jury instruction that the shooting was justified if the jury found it was done to prevent

the infliction of such mental injury. The trial court's refusal to give such an instruction was correct, since a person is justified in using deadly force only if he reasonably believes that it is necessary to prevent death or great *bodily* injury to himself or another. OCGA § 16-3-21 (a) (Code Ann. §§ 26-902, 27-207). We hold that mental anguish does not constitute "great bodily harm"; therefore, its alleged infliction does not justify killing the inflictor.

3. Appellant also argues that the jury should have been informed that justification was a possible defense to the murder charge because it was up to the jury to determine whether the facts presented at trial constituted an instance "which stand[s] upon the same footing of reason and justice as those enumerated in this [article]." OCGA § 16-3-20 (6) (Code Ann. § 26-901). However, since the Supreme Court has ruled that prevention of adultery does not justify the killing of an illicit lover by a spouse (*Burger v. State,* supra), and we have ruled that mental anguish does not rise to the level of "great bodily harm" as it is used in OCGA § 16-3-21 (Code Ann. §§ 26-902, 27-207) (see Division 2 of this opinion), such an instruction was not authorized and the trial court committed no error in refusing to give it.

4. Since the jury was repeatedly instructed that the state had the burden of proving each element of the crime beyond a reasonable doubt, it was not error for the trial court to refuse to instruct the jury with regard to the state's burden separately as to each individual element.

5. Appellant asserts error in several of the jury instructions given on the elements of murder. Inasmuch as appellant was convicted of manslaughter and thereby acquitted of murder (Price v. Georgia, 398 U.S. 323 (90 SC 1757, 26 LE2d 300)), she cannot have suffered harm from any alleged error concerning the instructions on murder, and we will not delve into them further.

6. In four of her enumerations, appellant contends that the trial court failed to charge the jury on important points of law. Although it did not use the phraseology suggested by appellant, the trial court satisfactorily charged the jury that defendant was presumed innocent; that the state had the burden of proving its case, including intent, beyond a reasonable doubt; that a conviction based on circumstantial evidence must exclude every reasonable hypothesis save that of the guilt of the accused; and that appellant's acts could be evidence of a diseased mind. No error resulted from the trial court's refusal to use appellant's charges on these issues. *Stevens v. State,* 247 Ga. 698 (8) (278 SE2d 398).

7. Appellant presents several enumerations of error which focus on the content of the trial court's jury instructions on insanity as a

defense.

"A person shall not be found guilty of a crime, if at the time of the act . . . constituting the crime, the person did not have mental capacity to distinguish between right and wrong in relation to such act . . ." OCGA § 16-3-2 (Code Ann. § 26-702). In light of the statutory definition of insanity, the trial court's jury charge that being upset or distraught, or suffering from mental stress was not a defense if the defendant was able to distinguish right from wrong was a correct statement of the law and was not, as alleged by appellant, a judicial comment on the evidence.

8. Inasmuch as the state does not have the burden of proving the sanity of the accused beyond a reasonable doubt (*Strickland v. State,* 247 Ga. 219 (19) (275 SE2d 29); *State v. Avery,* 237 Ga. 865 (230 SE2d 301)), it was not error to refuse to give such an instruction to the jury. Likewise, it was not error to charge that the defendant had the burden of proving by a preponderance of the evidence her mental incapacity. The argument that such a charge impermissibly shifts the burden of proof to the defendant has been rejected by the appellate courts of this state in *Boswell v. State,* 243 Ga. 732 (256 SE2d 470) and *Frier v. State,* 157 Ga. App. 56 (276 SE2d 261).

9. Nor was it error to refuse to charge on delusional compulsion. Before such a defense is available, it must appear that the defendant was acting under a delusion which, if true, would justify her act. *Brown v. State,* 228 Ga. 215, 217 (184 SE2d 655). Since the delusion allegedly suffered by appellant (the adulterous affair between her husband and the victim) does not justify homicide (see Division 1), a charge on delusional compulsion was not authorized.

10. Appellant complains that the trial court's charge that a person is presumed to be of sound mind, that acts of such a person are presumed to be the product of his/her will, and that it may be inferred that such a person intends the natural and probable consequence of the act done, was impermissibly burden-shifting. See Sandstrom v. Montana, 442 U.S. 510 (99 SC 2450, 61 LE2d 39). The charge complained of was immediately followed by an instruction that the aforementioned presumptions were not conclusive, were rebuttable, and did not shift the burden of proof to the defendant. The trial court then iterated that the state had the burden of proving all elements of the crime beyond a reasonable doubt. This charge effectively removed any possible Sandstrom problem. *Lackey v. State,* 246 Ga. 331, 338-339 (271 SE2d 478).

11. The trial court instructed the jury that the reasonable man standard governed a person's act, and when an act violated that standard and a penal statute, the conduct was criminal unless excused by insanity. Contrary to appellant's assertions, the charge

did not direct a verdict against her. While it added nothing to the jury charge as a whole, the questioned instruction stated valid principles of law and was adjusted to the evidence of the case. It, therefore, was not error to give the charge.

12. Appellant claims error in the trial court's refusal to charge the jury that it could not arbitrarily disregard a defense established by positive, uncontradicted, unimpeached testimony. Appellant asserts that testimony of her good character and insanity was positive, uncontradicted, and unimpeached and cites several civil cases in support of her position. Initially, we question the appellant's characterization of the testimony as uncontradicted and unimpeached, but, even assuming arguendo appellant's characterization and the fact that this civil rule is applicable to the criminal arena, "opinionative testimony is not included in this rule." *Thompson v. City of Atlanta,* 66 Ga. App. 255 (17 SE2d 761).

13. Citing *Reaves v. State,* 146 Ga. App. 409 (7) (246 SE2d 427) and *Shropshire v. State,* 81 Ga. 589 (8 SE 450), appellant finds error in the following charge: "[R]egardless of whether or not the Defendant has any other defense and regardless of whether or not there is any other evidence in the record upon which a reasonable doubt as to her guilt could be based, proof of good character may of itself constitute such a defense in her behalf; and you, the jury, overriding any amount of positive evidence pointing to the guilt of the Defendant may, as you see fit, acquit the Defendant upon the reasonable doubt and proof of good character generated in your minds." Since the jury was also instructed that "[t]he presumption of innocence may be considered as evidence of the innocence of the accused," the *Reaves* issue is not present because the trial court's charge, taken as a whole, allowed the jury to base a reasonable doubt on that presumption alone.

14. Nor was this jury restricted by the instruction as was the jury in *Shropshire,* supra. The *Shropshire* jury was told that good character was to be considered only if there was a doubt as to the defendant's guilt. Here, the jury was informed that good character, in and of itself, was a defense to the charge against appellant and, regardless as to whether or not there was a reasonable doubt as to appellant's guilt, could be a basis for acquittal.

15. The trial court's charge that the presumption of innocence may be considered evidence of innocence and that the presumption may be rebutted by proof was not erroneous. See *Reaves v. State,* supra.

16. Nor was the appellant denied the effective assistance of counsel and due process of law by the trial court's failure to object to defense counsel's opening statement in which she stated her reliance

on a justification defense. It goes without saying that it is not within the province of the trial court to object to remarks made by an attorney in an opening statement. Furthermore, the trial court's willingness during the trial to entertain the possibility of charging the jury on justification does not require that the jury be so charged if, at the conclusion of the evidence, such a charge is not authorized. While it is reversible error for a trial court to inform the attorneys of the contents of the jury's instructions before closing arguments and subsequently give different charges (see *Daniels v. State,* 137 Ga. App. 371 (4) (224 SE2d 60)), it is not error for the trial court to be receptive during the trial to the possibility of giving certain jury charges, and then to inform trial counsel *prior to closing arguments* of the content of the jury instructions authorized by the evidence adduced at trial. The attorneys, thus informed, were able "to argue their case to the jury intelligently and on the basis of the guiding legal principles under which the argument should be made" (id., p. 374), and appellant was not deprived of any constitutional right.

17. Appellant also enumerates as error several of the trial court's evidentiary rulings.

During the testimony of two of appellant's aunts, counsel for appellant attempted to introduce evidence of appellant's mental state at the time of the killing by seeking the witnesses' lay opinions as to appellant's mental state based on their observations of appellant six days to two months after the incident. The trial court sustained the state's objection to the testimony, and appellant now takes issue with those rulings.

The presumption of sanity may be rebutted "by evidence of the mental condition of the accused at the time of the offense, or that before and after the offense which tends to show his condition at the time of the offense." *Gilbert v. State,* 235 Ga. 501 (220 SE2d 262). "Sanity or insanity is a proper subject for opinion evidence, and where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor. [Cits.]" *Jarrard v. State,* 206 Ga. 112 (hn. 3) (55 SE2d 706). " 'A lay witness can give opinion testimony as long as he gives sufficient facts to form the basis of his opinion.' [Cits.]" *Leonard v. State,* 157 Ga. App. 37, 38 (276 SE2d 94). A factual basis for such opinion evidence is laid when there is evidence that the witness "had known the accused, had been in his presence, and had observed his conduct." *Brock v. State,* 206 Ga. 397, 399 (57 SE2d 279). The opinion of a sheriff who had observed a defendant while he was incarcerated for two months after he had allegedly committed an offense was admissible in *Strickland v. State,* 137 Ga. 115 (72 SE 922). In expressing their opinions as to the sanity of the defendant in

*Moses v. State,* 245 Ga. 180 (263 SE2d 916), lay and expert witnesses testified about a period of time from several months to 11 years preceding the homicide. Based on the above authority, the aunts should have been permitted to use incidents from the post-homicide period upon which to base their opinions as to appellant's sanity.

However, just as in *Strickland,* 137 Ga. 115, supra, the exclusion of the evidence does not warrant a new trial. Upon cross-examination, one aunt admitted that she could recall no declaration or act of appellant which indicated to her that appellant was unable to distinguish right from wrong, and, in the proffer made by appellant of the other aunt's testimony, there was no evidence that appellant did not know the difference between right and wrong. Furthermore, a number of witnesses testified as to appellant's conduct before, during, and after the shooting. Thus, the exclusion of the testimony was not harmful error. See *Strickland v. State,* 137 Ga. 115, supra.

18. During his cross-examination of several of appellant's character witnesses, the prosecuting attorney asked: "So, in other words, if she got up on the witness stand and told you what otherwise seemed to be an utterly fantastic and unbelievable story, and other witnesses contradicted that story, you'd still believe [appellant] above all those other witnesses?" The assistant district attorney also asked several of appellant's character witnesses if their opinion as to a person's good character would be affected upon being apprised of the fact that the person had shot another person twice from behind, shot a man in the chest, and then said, "Let the goddamn son of a bitch die." Appellant claims that these inquiries were hypothetical questions which should not have been allowed because they were not based on facts in evidence.

The questions sought to examine the depth and limit of the character witnesses' belief in appellant and, as such, were permissible. Furthermore, the evidence of record refutes several of appellant's assertions. The medical examiner who performed the autopsy on the decedent testified that two of the three entry wounds in decedent's body were in her back. An eyewitness to the shooting testified that appellant stated, "Let that son of a bitch die." Although the wounded man, appellant's husband, testified that he had been shot in the stomach rather than the chest, we do not deem this discrepancy to have been so prejudicial as to constitute reversible error. Finally, while it is true that no one testified that appellant used the word "goddamn," it is also true that there was no objection at trial on this ground to the assistant district attorney's question. Therefore, there is nothing to review here. *Tyler v. State,* 147 Ga. App. 394 (2) (249 SE2d 109).

19. Appellant claims that the prosecuting attorney, while

asking the above question of one character witness, picked up the weapon used in the shooting and "was waving the gun around in the presence of the jury, and was jabbing it in front of them in a menacing manner." When appellant's counsel objected to this alleged behavior, the trial court refused to allow the record to reflect her recollection of the assistant district attorney's actions because, in the words of the trial court, "he was not jabbing the weapon and he was not doing some of the other things that you just stated." Based on that statement, we find no error in the handling of the gun by the prosecuting attorney.

20. A gun which was identified as one similar to the one which had been in the possession of appellant prior to her possession of the weapon used to shoot the decedent was displayed to at least one witness in the presence of the jury. The gun, which was introduced to show ill will between the parties and appellant's frame of mind, was offered into evidence but was never admitted. Contrary to appellant's assertion, this was not a situation in which the assistant district attorney displayed to the jury a gun not offered into evidence as an exhibit. Compare *Roberts v. State,* 242 Ga. 634 (4) (250 SE2d 482).

21. On cross-examination, the medical examiner who performed the autopsy on the victim was asked about blood alcohol and urine narcotic tests performed as part of the autopsy. After the witness testified that he had neither performed nor supervised those tests, the state's hearsay objection was sustained. Inasmuch as records containing "evaluations, opinions, diagnoses, conclusions and statements of third parties not before the court are inadmissible" (*Moody v. State,* 244 Ga. 247 (4) (260 SE2d 11)), it goes without saying that testimony seeking the same information is also impermissible.

22. At trial, appellant's husband testified that appellant was "wild-eyed" when she approached him and the victim minutes before the shooting. On cross-examination, the assistant district attorney asked the witness if he had ever so described his wife's appearance to the authorities. After he admitted that he had not, appellant's counsel attempted to introduce a prior consistent statement made to her by the witness during his eight-day stay in a hospital intensive care unit immediately following the shooting. Appellant now contends that the trial court's refusal to admit the prior consistent statement was error.

"Ordinarily, prior extrajudicial statements consistent with a witness' testimony are inadmissible. [Cits.] But where counsel imputes to the witness an intent to fabricate from some motive, interest or relationship, it may be shown that the witness made a consistent statement *at a time when the motive or interest did not*

*exist.* [Cits.]" (Emphasis supplied.) *Crawford v. State,* 139 Ga. App. 347 (3) (228 SE2d 371). The witness was married to appellant both at the time he made the statement to appellant's counsel and at the time of trial. There was no showing that the motive or interest allegedly imputed to the witness at trial was not present when the earlier statement was made. Therefore, it was not error to exclude the prior statement.

23. During cross-examination of the girl friend of the victim's son, the trial court sustained objections to questions regarding the witness' use of narcotics on the night of the shooting. Those questions were correctly labeled as immaterial to the charges leveled against appellant and were properly excluded. See *Taylor v. State,* 243 Ga. 222 (8) (253 SE2d 191). Similarly, it was not error to sustain an objection to a question propounded to appellant concerning the existence of a lawsuit brought against her by the victim's son.

"It is the rule that in a prosecution of a criminal case it is reversible error, where the evidence is conflicting, to refuse to allow a State's witness on cross-examination to testify that he has pending a damage suit based upon the same state of facts involved in such criminal case. [Cits.]" *Kelly v. State,* 63 Ga. App. 231, 240 (10 SE2d 417). In the present case, however, there is little conflict in the evidence since appellant admitted she shot the victim (see *Carter v. State,* 150 Ga. App. 119 (2) (257 SE2d 11)); and, rather than being asked of a prosecution witness on cross-examination, the question was propounded to the defendant on direct examination. For those reasons, reversal under the *Kelly* rule is not called for and the refusal to allow the question was not prejudicial error. See *Carter,* supra.

24. Appellant's counsel was twice rebuked by the trial court in the presence of the jury. She now asserts that the trial court's actions were unnecessary and deprived appellant of due process and her right to counsel. We disagree.

"Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds . . ." OCGA § 17-8-75 (Code Ann. § 81-1009). After a review of the transcript, we have concluded that the trial court fulfilled its statutory duty, and we will not entertain appellant's enumerations further. Nor was it error to refuse to rebuke the assistant district attorney for asking an allegedly improper question during his cross-examination of appellant. The trial court did not find it to be "a statement of prejudicial [matter]" and we are in

agreement with that conclusion.

25. During his closing argument, the assistant district attorney made a remark which the trial court found to be inappropriate. The trial court's offer to give a curative instruction was refused by appellant's counsel. She will not now be heard to say that the trial court erred in failing to give curative instructions and to rebuke the prosecuting attorney. See *Sheets v. State,* 143 Ga. App. 510 (1) (239 SE2d 196).

26. The state counsel's comment during closing argument on the lack of expert testimony regarding appellant's alleged insanity was not improper argument but was, instead, "a comment upon the defendant['s] failure to produce a witness. No error appears." *Gamarra v. State,* 142 Ga. App. 196 (5) (235 SE2d 652). *Ferry v. State,* 161 Ga. App. 795 (1) (287 SE2d 732), cited by appellant, is concerned with a prosecutorial comment on the defendant's failure to produce his wife as a witness. A spouse, while a competent witness, cannot be compelled by the defendant spouse to testify, and that failure to testify is therefore not proper subject matter for the state's closing argument. *James v. State,* 223 Ga. 677 (5) (157 SE2d 471). The same reasoning does not hold true in the case of an expert witness, and the remark of counsel for the state was not cause for a mistrial. See *Shirley v. State,* 245 Ga. 616, 618 (266 SE2d 218).

27. After the jury had begun its deliberations, counsel for appellant requested that the defense be permitted to reopen its case to submit newly discovered evidence. After a proffer was made of that evidence, which consisted of the testimony of a DeKalb County police officer on duty the night appellant was arrested and incarcerated, the trial court ruled the evidence cumulative and refused to reopen the case for its submission. Appellant takes issue with that ruling.

" 'The trial judge is clothed with very broad discretion in the matter of allowing additional evidence at any stage of trial, and that discretion will not be controlled except where there appears to have been an abuse of discretion.' [Cits.]" *Page v. State,* 249 Ga. 648, 651 (292 SE2d 850). That discretion is also to be exercised upon a request to reopen after the jury commences deliberations. *State v. Roberts,* 247 Ga. 456 (277 SE2d 644). Having read the transcript of both the trial and the proffer, we find no abuse in the exercise of the trial court's discretion.

28. Appellant persists in her assertion of abuse of discretion by claiming that the evidence should have been given her under her request for exculpatory evidence filed pursuant to Brady v. Maryland, 373 U.S. 83 (33 SC 1194, 10 LE2d 215). However, when a question concerning compliance with the Brady mandate is raised on

appeal, "[t]he appellant has the burden of showing how his case has been materially prejudiced . . ." *Street v. State,* 237 Ga. 307, 316 (227 SE2d 750). The evidence having been ruled cumulative, appellant has not shown any prejudice she suffered.

29. During its deliberations, the jury asked the trial court to redefine murder, malice, voluntary manslaughter, insanity, and innocence. The trial court complied by rereading its original charge on these areas of the law. Appellant argues that the recharge should have included instructions on the presumption of innocence, reasonable doubt, intent, and the defenses of good character and justification.

" 'Where the jury requests further instructions upon a particular phase of the case, the court in [its] discretion may recharge them in full, or only upon the point or points requested.' [Cits.]" *Shouse v. State,* 231 Ga. 716 (13) (203 SE2d 537). No abuse of discretion having been shown, there was no error in the trial court's decision to recharge only on the points requested. The cases cited by appellant, *Edwards v. State,* 233 Ga. 625 (212 SE2d 802); *Whitfield v. State,* 143 Ga. App. 779 (240 SE2d 189); and *Freeman v. State,* 142 Ga. App. 293 (235 SE2d 560), are totally inapposite inasmuch as these cases are concerned with a failure on the part of the trial court to comply with a jury recharge request. Such is not the case here.

30. Inasmuch as there was evidence from which the jury could determine that appellant, while acting in the heat of passion, shot and killed a woman, it was not error to deny appellant's motions for a directed verdict of acquittal, and appellant's assertion of the general grounds is without merit. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Quillian, P. J., concurs. Carley, J., concurs in all divisions except Division 20 and in the judgment.*

DECIDED FEBRUARY 7, 1983 —

*Victoria D. Little,* for appellant.
*Robert E. Wilson, District Attorney, Ann Poe Mitchell, Assistant District Attorney,* for appellee.