## TEASLEY v. THE STATE.

The law embraced in section 73 of the Penal Code does not qualify or limit the law of justifiable homicide as laid down in sections 70 and 71 of that code. The section first mentioned applies exclusively to cases of self-defense from danger to life arising during the progress of a fight wherein both parties had been at fault. The other two sections are applicable when the homicide is committed in good faith to prevent the perpetration of any of the offenses mentioned in section 70, or under the fears of a reasonable man that such an offense will be perpetrated unless the person who is actually, or apparently, about to commit it be slain. Instructions as to these two separate branches of the law of justifiable homicide should not be so given as to confuse the one with the other.

Argued July 5, — Decided July 20, 1898.

Indictment for murder. Before Judge Reese. Elbert superior court. March term, 1898.

On the trial of Ed. Teasley for murder, Joe McDuffie testified: On February 28, 1898, Dave Harris, Peter Blackwell and I started together to take a ride, and rode to Ed. Teasley's. In the afternoon Dave and Ed. shot crap from 3 until 10 o'clock at night. Dave got most of the money; they had some trouble over the game. At the time of the killing Dave and Ed. had a fuss in the house. This was the beginning of the fuss. Dave was killed about half past ten o'clock. Immediately before the killing, Ed. was following Dave and asking him wasn't he going to play like he said he was going to do. Dave turned around and said, "No, by God, I aint. I will see you some other time." Ed. stepped back and said, "You aint going to do it, is you?" Dave said, "No, I aint. I am going down this way, and will see you some other time." Then Dave turned around and said, "I shot you for craps, and played you an honest game." Ed. gave Dave the durned lie. Dave turned around and asked him what did he want. Ed. said, "I want a damned good understanding before you go any further." Dave turned around and started off down the road. Ed. said, "You aint going to do it, is you?" Dave said, "No, I aint"; and then they came back together. They ran together, and at the flash of the pistol I saw Dave's hand up over his head, and he fell right down on the ground on his face. I heard sound of the pistol; saw pistol

after it was shot. Ed. shot the pistol. It happened in Elbert county. Dave was shot in left eyebrow, and fell instantly. After Dave and Ed. had been shooting craps, Dave said, " I am tired playing and have got to go home"; and he quit. Dave said, "I promised to play until I got tired, and now I am tired and am going home." Ed. said, "If you are not going to play like you said, you get out of my house and get out quick"; and Dave went out, and Ed. followed him outdoors, and they got to fussing outdoors. I heard the stroke Dave gave Ed., and the fire of the pistol, about the same time. Just before the pistol fired I turned my back and started off. I saw there was going to be a difficulty, and I started off. I turned around to call Peter, with my face towards Dave and Ed. when pistol fired. Dave and Ed. were between me and Peter when I heard the lick, and the pistol fired immediately. I had my face toward Dave and Ed. They both met at the same time. I saw them start at each other. They turned right around and rushed on each other. They were six or eight feet apart when they started to rush on each other. When I turned around to walk off, Dave walked off from Ed.; and when I turned around to call Peter, Dave and Ed. were going together. I saw Dave and Ed. both start at each other, and at the flash of the pistol I saw Dave had his hand up over his head, and saw him fall down on the ground on his face. Dave started off three or four times before the killing. Dave had gone across road and down the path about twenty-five yards from Ed.'s house where the fuss and killing took place. Dave and Ed. went out of house. I woke Peter up while Dave was just outside of door, and then Dave, Peter and I went across the road. Ed. stepped outside of the door, stepped back inside the door and right back out. The killing was right across the road from Ed.'s house, a little piece down the path. Never saw any knife in Dave's hand.— From other testimony it appears that there were powder-burns on Dave's face, indicating that he was within three or four feet of the pistol, and perhaps closer. Defendant came near bleeding to death from a stab wound at the base of his neck. The wound was two inches deep, straight in, struck sidewise, not down. The blow was struck with a side lick with blade flat across the neck; it was a straight stab in, not cut down.

Prisoner stated: Dave left my house and started out to the road, he and Peter and Joe. He said, "Peter, you and Joe come on and go with me." They walked off across the road in front of the house, and Dave and Peter stopped. Dave called me. I said, "What you want?" He said, "Come over here. I want to see you." He said, "By God, do you want to fight?" I said, "No, Dave, I don't want to fight." He said, "Come up closer." I stepped up sidewise, standing about as I am now. I stepped up a little closer. He had his right hand hanging down by side of him and sort of moving in a shaking way, sort of rolling his hand back and forth on his leg by his side. I saw he had a knife in it. I stepped back, and as I stepped back he stuck his knife in the left side of my neck, and he drew back to stab me again, and I just shot and he fell. He stabbed me in the neck and drew back to hit me again, I shot, and he dropped right down.

The jury found the defendant guilty, with recommendation of life imprisonment. He moved for a new trial, which was denied, and he excepted. The motion alleges, in addition to the general grounds, that the court erred in giving the following instructions to the jury:

1. "A bare fear of any of those offenses to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing; it must appear that the circumstances were sufficient to excite the fears of a reasonable man — a man reasonably self-possessed, a man reasonably courageous, and not a coward, and that the party killing really acted under the influence of those fears and not in a spirit of revenge. If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." It is contended that this charge deprived the defendant of the right to rely upon justification of the killing under the fears of a reasonable man and not in a spirit of revenge, and placed his defense solely upon the ground that the killing was necessary to prevent the felony.

2. "If you believe from the evidence that, without any considerable provocation, the defendant Ed. Teasley presented a pistol at Dave Harris and the deceased drew a knife and was shot and killed by the prisoner as he was drawing his knife, and you believe that deceased drew his knife to defend himself against the attack of the prisoner, then the killing was murder; but if you believe deceased drew his knife for mutual combat, the killing would be voluntary manslaughter." It is contended that there was no evidence to warrant this charge; and that it cut off the defense that the homicide was justifiable under the fears of a reasonable man and was not done in a spirit of revenge.

*Joseph N. Worley*, for plaintiff in error.    *J. M. Terrell, attorney-general*, and *R. H. Lewis, solicitor-general*, contra.

LUMPKIN, P. J.    If a man who is himself free from fault kills another "in self-defense, or in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either," or if the killing be done for the bona fide purpose of preventing any one of these offenses and under circumstances sufficient to excite the fears of a reasonable man, the slayer's justification is complete without showing that, "in order to save his own life, the killing of the other was absolutely necessary." Where, however, a fight has been begun and carried on in hot blood, both parties being at fault, and one of them is slain, the other can not justify the killing without showing that it was necessary. These are not new views as to the meaning and purpose of the sections of the Penal Code referred to in the headnote. They have been often considered and discussed. The following are a few only of the pertinent cases: *Killen* v. *State*, 50 *Ga.* 230; *Adams* v. *State*, 72 *Ga.* 85; *Keaton* v. *State*, 99 *Ga.* 197; *Powell* v. *State*, 101 *Ga.* 9. In the last, Mr. Justice Little so carefully and thoroughly discussed the whole subject that further comment is not now essential.

In the present case, the statement of the accused, if true, brought his defense squarely under the provisions of sections 70 and 71 of the Penal Code; but the court nevertheless charged that he would not be justified unless at the time of the killing

it was absolutely necessary that Teasley, in order to save his own life, must kill his adversary. This charge is assigned as erroneous; and we think it was. Exception is also taken to a charge which, though abstractly correct, is complained of because not warranted by the evidence. We have carefully read the evidence, and are of the opinion that this point is also well taken. In our opinion, therefore, the accused should have another trial. *Judgment reversed. All the Justices concurring.*