## 41911. MURRAY v. THE STATE.

(329 SE2d 485)

HILL, Chief Justice.

Derek Theopolis Murray was convicted of murder for the stabbing death of Eugene Guinyard and received a life sentence. He appeals.[1]

The jury was authorized to find that, after spending the evening in Jacksonville, the defendant and his girl friend returned to St. Simons Island around 1:00 a.m. on April 3, 1983, and stopped at the Club Trocadero to eat. The defendant pulled in next to the car of the victim, "Gino" Guinyard, got out of his car, beat on the victim's car window and spoke in a derogatory manner to the victim's female companion. The victim got out of his car and told the defendant to keep his hands off the victim's car. When the victim reentered his car, the defendant approached him and began pushing on his chest. A fist fight ensued, described as "brutal" by one witness, in which from all accounts the victim was getting the best of the defendant. The defendant removed an electrician's knife from his pocket and slashed the victim, who was on top of him, across the chest. When the two stood up, the defendant said "Stop man, you're hurt." Despite the blood soaking his shirt, the victim denied being hurt and continued the fight. The fight ended when the victim backed up and fell backward into a hedge 40 feet away. After the defendant pulled the victim out of the bushes, he went over to the victim's car, threw a beer cooler onto the ground, and then drove to his home which was nearby.

The medics were summoned and the defendant came back in another car to see what was going on. When that car refused to restart, he left for home on foot. Later, he again returned in his girl friend's car with the headlights off. When the police noted this, they gave chase, but by then he had returned to his home.

Based upon information they obtained, the police went to the defendant's home and asked him to go to the station for questioning. There, he admitted that in order to get the victim off him he had cut the victim with the black handled electrician's knife he carried in his pocket. A similar knife was found by the victim's car, but it was closed and had no blood on it.[2] An autopsy revealed that the victim died of 2 equally fatal stab wounds: one through the chest which pierced the heart, and the other in the upper back which punctured a

---

[1] The homicide occurred on April 3, 1983. The defendant was convicted on May 17, 1984, and a motion for new trial was filed on May 23. The transcript was filed on August 31; the motion was amended on September 11, and was overruled on November 16, 1984. Notice of appeal was filed in the trial court on December 12, 1984. The record was docketed in this court on January 9, 1985, and the case was submitted for decision on February 22, 1985.

[2] The state urges that the defendant may have cleaned the knife and returned it or another knife to the scene of the fight.

lung. Other wounds, on the victim's left elbow, near his ear, and a slicing laceration across his chest were also noted. Photographs of injuries to the defendant, including a black eye were also introduced at trial.

1. Having reviewed the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found the defendant guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). This enumeration presents no ground for reversal.

2. The defendant testified that the victim initiated the fight and that the defendant was defending himself. He complains of the following jury charge, which was given upon the request of the state: "The defense of justification, ladies and gentlemen, is available to one who has in good faith endeavored to decline any further struggle *if the killing was absolutely necessary to save his own life.*" (Emphasis supplied.) The defendant argues that this is an erroneous principle of law.

The requirement that the slayer show that "the killing was absolutely necessary to save his own life" was a requirement as to mutual combat, but not as to self-defense. See *Hill v. State*, 211 Ga. 683 (4) (88 SE2d 145) (1955); *McCray v. State*, 134 Ga. 416 (3) (68 SE 62) (1910); *Teasley v. State*, 104 Ga. 738, 741 (30 SE 938) (1898).[3] Such requirement appeared in Sec. 73 of the Penal Code of 1910 and in § 26-1014 of the Code of 1933. However, when the criminal code was revised in 1968, Ga. L. 1968, pp. 1249, 1272, the requirement was deleted from revised § 26-902, now OCGA § 16-3-21 (b) (3).[4] See Code of Georgia Annotated, Title 26, Criminal Code of Georgia, with Committee Notes and Comments, p. 69 (1968).

The defense of self-defense presently is set forth in OCGA § 16-3-21, supra,[5] and it is error to add to it that the killing must have been "absolutely necessary" to save the slayer's life.[6]

Thus, the district attorney's requested charge on "absolute necessity to save his own life" was not a correct statement of the law, and the trial court should have corrected it upon defendant's objection.

---

[3] We find that the defendant disclaimed reliance on mutual combat as a defense and hence cannot complain of the trial court's failure to charge on mutual combat.

[4] "A person is not justified in using force under the circumstances specified in subsection (a) of this Code section if he: . . . (3) was the aggressor or was engaged in a combat by agreement unless he withdraws from the encounter and effectively communicates to such other person his intent to do so and the other, notwithstanding, continues or threatens to continue the use of unlawful force." OCGA § 16-3-21 (b) (3).

[5] See Suggested Pattern Jury Instructions, Vol. II (Criminal Cases), Part 3, BB (Justification), pp. 56-57 (1984).

[6] In its charge the trial court also charged that "[a]bsolute necessity to kill is not the test which you should use to determine whether the homicide of the deceased was justifiable. . . ." Thus, the charges were conflicting.

"Having given the erroneous instruction, it could only be corrected by the judge expressly withdrawing it and instructing the jury to disregard it. Since this was not done, harmful error resulted therefrom." *Salisbury v. State*, 221 Ga. 718 (2) (146 SE2d 776) (1966); *Bryant v. State*, 191 Ga. 686 (13) (13 SE2d 820) (1941). Compare, e.g., *Troup v. State*, 209 Ga. 9, 12 (70 SE2d 470) (1952). A new trial must be ordered.

3. We therefore do not reach the question of whether "retreat" was an issue in the case. See *Johnson v. State*, 253 Ga. 37 (315 SE2d 871) (1984).

4. Under the circumstances of this case (see footnote 2) we find no error in admitting the knives found at the defendant's house.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 10, 1985.

*Lane & Coutler, Grayson P. Lane,* for appellant.

*Glenn Thomas, Jr., District Attorney, John B. Johnson III, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Senior Attorney,* for appellee.