42292. NELSON v. THE STATE.
(331 SE2d 554)

MARSHALL, Presiding Justice.

Eric Robert Nelson was indicted for murder, aggravated battery, two counts of aggravated assault, and theft by taking in Fulton Superior Court; he was found guilty but mentally ill at the time of the crime. See OCGA § 17-7-131 (b) (1) (D).[1]

1. On appeal, the appellant contends that the verdict is not supported by sufficient evidence and that no rational trier of fact could have found that the appellant failed to prove by a preponderance of the evidence that he was insane and/or suffering under a delusional compulsion at the time of the offenses.

---

[1] The crimes were committed on August 10, 1981. The jury verdict was filed on August 11, 1983. A motion for new trial was filed on September 9, 1983, amended on February 18, 1985, and heard and overruled on February 19, 1985. Notice of appeal was filed on March 19, 1985. The transcript of evidence was filed on September 27, 1983. The case was docketed in this court on April 23, 1985. After briefing, it was submitted for decision without oral argument on June 7, 1985.

Evidence was adduced at the trial to the following effect. When the appellant requested to be permitted to move to another apartment within the complex, Mr. Boatright, the maintenance-services employee of the apartment complex, inspected the appellant's apartment and observed a considerable amount of damage therein. The appellant realized that he had done something wrong, and tendered to Mr. Boatright a $500 check to pay for repairs, which check Mr. Boatright refused to accept. No guns were observed in the apartment at that time. When Ms. Sutton (the rental agent) arrived at the apartment accompanied by Ms. Martin (another employee), she told the appellant that she could not accept money from the appellant until a contractor determined the cost of repairs. Ms. Sutton, Ms. Martin, and Mr. Boatright then left, telling the appellant that they would return later with the appellant's father. At that time, the appellant appeared to be acting in a normal manner, and spoke nicely without screaming or yelling.

When the three apartment personnel and the appellant's father went to the appellant's apartment on August 10, 1981, the appellant responded to knocks on the door by saying "all right," but did not open the door after repeated knocks and a demand by his father to open it. Ms. Sutton asked the appellant's father if the appellant had a gun, and received a negative reply. The appellant suddenly jerked the door open and, with a revolver in each hand, commenced firing bullets through the locked screen door, killing Ms. Sutton and wounding his father and Mr. Boatright. When a police officer responded to a call, he observed the appellant running away from the apartment and reloading the revolvers. When asked to halt, the appellant refused, stating that "there are two people down the hill that have been shot." After a shootout with the officer, the appellant got in the police car and drove it off, pursued by another officer, and wrecked it shortly afterward. When he was arrested, the appellant talked bizarrely about Hitler and Nazis and his mission, after which he was taken to a hospital for treatment of a wound sustained in the shootout and psychiatric treatment.

Four .22 caliber weapons were found in the vehicle which the appellant was driving and eight more .22 caliber guns of various makes and over 500 rounds of ammunition were found in the appellant's apartment. No one knew where or how the appellant obtained these weapons. When the appellant was advised of his *Miranda* rights, he indicated that he understood them, knew them backwards, and could read them left to right. He spoke in a normal voice and was able to respond. Before he was asked any questions, he stated that "he had shot the faggots, he was sorry that he had shot at the police officer, and he stated that if he had to do it again he would do it again." When he was asked if he realized that he had taken a patrol vehicle,

he replied that he had, because he took the first thing he could drive. Ballistics tests showed that the fatal bullet was probably fired from the appellant's revolver.

The appellant's father testified that the appellant had a long history of mental illness, including hospitalization, court-ordered psychological evaluations and psychiatric treatment; and that the appellant did not consistently take his prescribed medication, without which he was hostile, reclusive, compulsive, spoke in monosyllables, and would not allow his parents into his apartment. Psychiatrist Dave Davis testified that he examined the appellant on September 20, 1981, and opined that he had a markedly impaired capacity to distinguish between right and wrong; that the appellant was a severe schizophrenic with a delusional compulsion; and that the appellant's condition had improved by September 1982, as the result of medication, professional treatment, and a supportive environmental structure. Psychiatrist Lewis Jacobs testified that, on January 18, 1982, in his opinion, the appellant did not have contact with reality and was schizophrenia paranoid chronic. He further testified that, on the day of the crimes, the appellant was so disorganized by mental illness and so much out of contact with reality that he had lost the ability to distinguish between right and wrong; that the appellant does not have organic brain damage; and that he had improved to the point that he was competent to stand trial. Dr. Lloyd Baccus, of the Fulton County Department of Health, concurred with Dr. Jacobs' opinion, but concluded that the appellant's knowledge of right and wrong was merely diminished, rather than absent. There was medical testimony that the appellant had delusional compulsions that overmastered his will and that he thought his home was a haven from the evil rays that were bombarding him.

From the above evidence, there is no question that the appellant is the person who committed the offenses. Additionally, there was evidence that the appellant had a knowledge, albeit diminished, of right and wrong. He was aware that some people had been shot and that he had stolen the police car. Although he thought his home was a haven from the evil rays that he thought were bombarding him, he left that safe place after the shooting. His flight after the shootings was evidence of his knowledge of right and wrong. "Schizophrenia is a psychosis, but a psychosis is not the equivalent of insanity — although they may be difficult to distinguish . . . It is a mental illness . . ." *Dennis v. State*, 170 Ga. App. 630 (2) (317 SE2d 874) (1984) and cit. The holding in *Butler v. State*, 252 Ga. 135, 137 (311 SE2d 473) (1984) — that "an order of the Probate Court finding one a 'mentally ill person requiring involuntary treatment,' OCGA § 37-3-1 (12) (Code Ann. § 88-501), cancels a previously existing presumption of sanity and raises a presumption of insanity" — is not applicable here, where

the appellant's previous involuntary hospitalizations had ended and the presumption of sanity would have been restored.

We conclude that any rational trier of fact could have found from the evidence adduced at trial, construed in a light most favorable to upholding the verdict, that the appellant was guilty of the crimes charged beyond a reasonable doubt, albeit mentally ill at the time of the crimes. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Jackson v. State*, 166 Ga. App. 477 (304 SE2d 560) (1983) and cits.

2. The appellant contends that the trial judge confused the jury when he charged, in an "insanity" case, that the acts of the appellant were to be judged by the standard of the conduct of a "reasonable person," which, he urges, was the expression of an opinion that he was a normal person.

Here, the trial judge correctly charged the jury as to the state's burden of proving the appellant guilty beyond a reasonable doubt; the definitions of the crimes charged; the elements of malice and intent; the appellant's defenses of self-defense, insanity, and delusional compulsion; the possible verdicts, including guilty beyond a reasonable doubt, not guilty, not guilty by reason of insanity, or guilty beyond a reasonable doubt but mentally ill; the difference between "insanity" and "mental illness"; and a test for insanity being the ability to distinguish between right and wrong.

In the course of instructing the jury on the law of insanity, the trial judge also charged the jury that "the reasonable-man standard governs a person's act, and when an act violates that standard and a penal statute, the conduct is criminal unless it is excused by insanity." This charge has been approved in *Chancellor v. State*, 165 Ga. App. 365 (11) (301 SE2d 294) (1983).

Where, as in *Chancellor v. State*, supra, the offense of voluntary manslaughter is raised by the evidence, the question is whether the defendant acted as a result of such passion resulting from such provocation sufficient to excite such passion in a reasonable person. OCGA § 16-5-2 (a). In this regard, the reasonable-man standard governs the person's act. When the defense of justification by reason of self-defense is asserted, the question concerns the reasonable belief of the defendant. OCGA § 16-3-21; *Daniels v. State*, 248 Ga. 591 (1) (285 SE2d 516) (1981). In this regard, the reasonable-man standard also governs the person's act.

As to the defense of insanity, it cannot be said that the reasonable-man standard governs the person's act. However, in charging the jury that the reasonable-man standard does govern the person's act, the trial judge also charged that when an act violates that standard and a penal statute, the conduct is criminal unless excused by insanity. As in *Chancellor v. State*, supra, this charge "added nothing

to the jury charge as a whole." 165 Ga. App. at 368. The remaining portions of the charge were correct here. We find no harmful error.

3. The trial court did not err in charging the jury: " 'Mental abnormality or mere weakness of mind is no excuse unless it amounts to imbecility or idiocy which deprives the offender of the ability to distinguish right from wrong.' " *Berryhill v. State*, 235 Ga. 549, 553 (8) (221 SE2d 185) (1975).

4. The verdict of guilty but mentally ill was not an unconstitutional application of an ex post facto law (OCGA § 17-7-131) because the crime occurred before the enactment of that statute. *Kirkland v. State*, 166 Ga. App. 478, 482 (2) (304 SE2d 561) (1983) and cits.

*Judgment affirmed. All the Justices concur, except Weltner, J., disqualified.*

DECIDED JULY 2, 1985 —
REHEARING DENIED JULY 23, 1985.

*R. David Botts*, for appellant.

*Lewis R. Slaton, District Attorney, Benjamin H. Oehlert III, Assistant District Attorney, Michael J. Bowers, Attorney General*, for appellee.