## A00A0247. BRACEWELL v. THE STATE.
### (534 SE2d 494)

BARNES, Judge.

A jury convicted Gaynor Bracewell II of voluntary manslaughter, and the trial court sentenced him to serve 20 years. Bracewell appeals, arguing that the trial court erred in giving the State's charge on justification and absolute necessity and that his trial counsel was ineffective because he did not object to the charge. He further asserts his trial counsel was also ineffective because he "did not adequately challenge the State's version of the shooting," and allowed the State to introduce improper hearsay testimony. Finally, he contends that the trial court erred in declining to give his charge on defense of habitation. Because we find that giving the charge on justification and absolute necessity was harmful error, we reverse.

Construed to support the verdict, the evidence showed that Bracewell, his girlfriend, Kelly Springer, and her two sons, Brent and Brannon, lived together in a house owned by Bracewell's father. Bracewell and Springer were going to buy the house together. On the Friday night before the shooting on Saturday evening, Springer was angry at Bracewell. Her son Brannon, who was 17, told her the night before that Bracewell had supplied Brannon with the bag of marijuana that led to his arrest a year before. Brannon also told her that he had used speed with Bracewell earlier in the month. Springer said this was the first she had heard about her boyfriend and son sharing drugs, and when she confronted Bracewell about it, he admitted both incidents. Springer told him she and her children were leaving as soon as they could borrow some money to do so.

The next evening, Saturday, Springer pulled into the driveway after staying with her ailing father most of the day. She sat in the car drinking beer and listening to the radio. Bracewell came out to

encourage her to come inside, but she declined until she had to use the bathroom. When she came out of the bathroom, Bracewell started arguing with her, and she lost her temper. She chased him through the house, and he ran upstairs to lock himself into a bedroom. She followed and began kicking ineffectually at the locked door. Brannon came out of another bedroom, asked if she wanted the locked door open, and then kicked it off its hinges for her.

Meanwhile, Bracewell ran through another doorway and down the stairs out to the porch. Springer followed and pushed him into a rocking chair, then put her hand on his leg, leaned over him, and began shaking her finger in his face and yelling at him about his drug use with her son. After Bracewell began hitting her in the head and kicking her, Brannon ran out of the house with a pistol in his hand.

Bracewell said, "Oh, shit," got up, and went inside, locking the front door. Brannon walked down the porch steps into the yard and said, "Y'all quit fighting. I'm sick of this." He fired one shot into the air and another shot into the ground, then threw the pistol aside. At that point, in a blind rage, Springer began kicking the locked front door.

Springer's 15-year-old son, Brent, and his 14-year-old cousin, Joseph, unlocked the front door and came out, saying Bracewell told them to get out of the house as he was loading a shotgun. The two boys hid on the side of the porch. Brannon came up behind Springer and tried to calm her down, saying, "Stop, you're tearing up the door-jamb it took me an hour to fix last week." He pinned her until she stopped struggling, then stood her up against a front porch column.

According to his mother, brother, and cousin, Brannon then went to the front door and yelled out, "Gaynor, it's me, Brannon. I am coming in. I don't have the gun." Using his right hand, he opened the front door about six or eight inches, took one step inside the foyer, and Bracewell fired a shotgun toward the door. According to Bracewell, however, Brannon screamed, "I'm going to kill you," kicked in the front door, and advanced toward Bracewell with a pistol aimed at him.

Springer went around Brannon and took a few steps inside to see the kitchen door open and Bracewell gone. She heard Brannon say, "Mom, I have been hit." He collapsed on the porch, and despite the efforts of his family and the emergency medical technicians who arrived shortly thereafter, Brannon died at the scene.

Medical examiner Parker testified that he recovered buckshot from four individual wounds. He saw no gunpowder or residue on the victim's clothing, from which he estimated that the shots were fired from a distance of about ten to twelve feet. The fatal wounds came from buckshot that hit Brannon in the heart and right lung. Parker

concluded from the trajectory of the buckshot that Brannon was turned to the left, away from the muzzle of the shotgun.

1. We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Bracewell guilty beyond a reasonable doubt of the voluntary manslaughter. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Bracewell argues that the trial court erred in giving a portion of the State's charge on duty to retreat.

The first part of the charge, about which Bracewell does not allege error on appeal, is from the suggested pattern jury charge on retreat, grouped under the other charges relating to justification.

> One who is not the aggressor is not required to retreat before being justified to using [sic] such force as is necessary for personal defense or in using force which is likely to cause death or great bodily harm, if one reasonably believes such force is necessary to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.

The next paragraph, about which Bracewell does allege error, reads as follows:

> One who is himself to blame, however, has not the same right of standing his ground and of justification as one who is not at fault. When the slayer is at fault, then to justify the homicide, he must show that there was an absolute necessity to kill to save his own life and that the person killed was the assailant or that the slayer had really in faith [sic] endeavored to decline any further struggle before the mortal blow was given.

Bracewell argues that the standard of "absolute necessity" in this charge is impermissibly higher than the "reasonable man" standard set forth in all of the statutory justification charges. He further contends that the error was harmful, as confirmed by the fact that the jury twice asked to be recharged on the law of self-defense and justification. The State responds that the charge is a valid proposition of law on the duty to retreat, from *Glover v. State*, 105 Ga. 597, 598 (31 SE 584) (1898).

The court in *Glover* held that the trial court did not err in refusing to give a request to charge on retreat which was too broad. Id. The court held that:

> one free from fault may, without retreating, take human life and be justifiable, if the circumstances are sufficient to excite the fears of a reasonable man that a felonious assault

is about to be made upon him, and the slayer, who is free
from blame, acts under the influence of such fears, with the
bona fide purpose of preventing the felony from being com-
mitted upon him. One who is himself to blame, however, has
not the same right of standing his ground and of justifica-
tion as one who is not at fault. When the slayer is at fault,
then, to justify the homicide, his defense must come up to
the principles of law embodied in section 73 of the Penal
Code, — that there was an absolute necessity to kill to save
his own life, and that the person killed was the assailant, or
that the slayer had really and in good faith endeavored to
decline any further struggle before the mortal blow was
given.

Id. at 598-599.

The Supreme Court of Georgia held in *Johnson v. State*, 253 Ga.
37 (315 SE2d 871) (1984) that, although the criminal codes in 1894
and 1984 were silent on the duty to retreat in self-defense cases,
"silence of the present code on the issue of when duty to retreat may
arise was not intended to eliminate the principles pronounced in
*Glover.*" Id. at 38. The court in *Johnson* found reversible error in the
trial court's failure to charge that the defendant had no duty to
retreat if he were not the aggressor. Id. at 39. Other cases discussing
retreat generally address whether a trial court erred in failing to give
a defense charge that the accused had no duty to retreat. See, e.g.,
*Conklin v. State*, 254 Ga. 558, 566-567 (5) (331 SE2d 532) (1985).

While the principles of *Glover* regarding the duty to retreat are
still sound, the "absolute necessity" language is not. The *Glover* court
noted that the absolute necessity standard reflected the principles of
law embodied in Section 73 of the Penal Code. Id. at 599. That sec-
tion, which traces at least as far back as the 1833 Cobb's Digest, pro-
vided:

If a person kill another in his defense, it must appear that
the danger was so urgent and pressing at the time of the
killing, that, in order to save his own life, the killing of the
other was absolutely necessary; and it must appear, also,
that the person killed was the assailant, or that the slayer
had really and in good faith endeavored to decline any fur-
ther struggle before the mortal blow was given.

Section 73 of the Penal Code. The section was also adopted verbatim
in subsequent codifications of Georgia law as Code § 26-1014.

A long line of Supreme Court of Georgia cases held that Code
§ 26-1014 applied only in cases of mutual combat, and contained a
harsher rule than the one found in the section on self-defense. See,

e.g., *Brown v. State*, 223 Ga. 76, 80 (3) (153 SE2d 709) (1967). Even if mutual combat were an issue in these earlier cases, the Supreme Court held that it was error to charge Code § 26-1014 along with the sections on self-defense and the "reasonable man" standard of fears without explaining the differences. Id.

The 1968 revision of the Criminal Code of Georgia significantly altered the justification provisions. The Committee Notes indicate that the new Code Ann. § 26-902 changed the law regarding mutual combat and absolute necessity. Among other changes, the new section incorporated the "reasonable belief" section of former Code § 26-1012 regarding justification, which provided that: "A bare fear of any of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man. . . ." This standard was incorporated into Code Ann. § 26-902 (a). Code Ann. § 26-902 (b) provided that the justification in subsection (a) was available to a mutual combatant only if he withdrew from the encounter and communicated his withdrawal to his opponent. The "absolute necessity" standard no longer appears in the Criminal Code.

Our appellate courts have found error in charging the jury that, to be justified, a defendant must show an absolute necessity to kill in cases of mutual combat, which imposes a higher threshold of justification for the killing than that required by the statute. *Murray v. State*, 254 Ga. 351, 352 (2) (329 SE2d 485) (1985); *Gerald v. State*, 189 Ga. App. 155, 156 (1) (375 SE2d 134) (1988). Therefore, we conclude that trial counsel's failure to object to the charge that, to be justified, defendant must show the killing was an absolute necessity constituted deficient performance. Next we consider whether that deficient performance prejudiced the defense.

The jury asked twice to be recharged on the issues of self-defense and justification. "Clarity in this portion of the charge was critical to an issue of defense, and since the discrepancy between the incorrect charge and the statutory provision more likely than not confused the jury, it prejudiced [the] defendant[ ]." *Gerald*, supra, 189 Ga. App. at 156 (1). Thus, we must conclude that the trial court erred by denying Bracewell's motion for new trial on this issue.

3. Because it may arise again on retrial, we will consider Bracewell's argument that the trial court erred in giving the State's request to charge on the definition of a "reasonable man" who is justified in committing homicide. The trial court charged the jury as follows:

> Bare fear on the part of a defendant shall not be sufficient to justify a killing. It must appear the circumstances

were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears and not in a spirit of revenge.

The fears of the slayer that will justify a homicide must be the fears of a reasonable man and if the defendant is an unusually timid man or lacking in courage, and committed the homicide under circumstances that would not generate fears in a hypothetical reasonable man, he would not be justified.

Thus, the law in homicide cases does not take into account the actual fears of the slayer, but considers all the circumstances with reference to determination as to whether they were sufficient to excite the fears of a reasonable person.

The first and third paragraphs essentially paraphrase the pattern charge on the doctrine of reasonable beliefs. Bracewell contends that giving the second paragraph of this charge was error because it did not allow the jury to consider how a reasonable person in the defendant's particular circumstances would act, considering the prior difficulties between the defendant and the victim.

Juries are permitted to consider how a reasonable person in defendant's particular circumstances would react. *Nelson v. State*, 254 Ga. 611, 614 (2) (331 SE2d 554) (1985). Bracewell's argument that the second paragraph of the quoted charge removes from the jury any consideration of prior difficulties between him and the victim is belied by the wording of the charge itself. The second paragraph merely restates that the standard by which the jury should decide whether a homicide was justified is that of a reasonable man in the circumstances presented.

Further, the trial court also charged the jury that:

[e]vidence of prior difficulties between the defendant and the alleged victim has been admitted for the sole purpose of illustrating, if it does show [sic] illustrate, the state of feeling between the defendant and alleged victim and the bent of mind and course of conduct on the part of the defendant.

Finally, the court instructed the jury that the State had the burden of proving beyond a reasonable doubt that the defendant was not justified. Along with the court's explanation of the burden of proof and the State's responsibility to prove each element beyond a reasonable doubt, the court explained that it would be the jury's duty to acquit appellant if the State failed in this regard. These instructions, taken as a whole, were sufficient. *Doss v. State*, 262 Ga. 499, 500 (3)

(422 SE2d 185) (1992); *Campbell v. State*, 207 Ga. App. 902, 906 (5) (429 SE2d 538) (1993). We find no error in the trial court giving this charge to the jury.

4. Bracewell's remaining enumerations of error are unlikely to arise again on retrial.

*Judgment reversed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED MAY 3, 2000.

*Cook & Connelly, Bobby Lee Cook, L. Branch Connelly, Rex B. Abernathy,* for appellant.

*Alan A. Cook, District Attorney,* for appellee.