S10A0608. DURRENCE v. THE STATE.
(695 SE2d 227)

THOMPSON, Justice.

Appellant Stacy Durrence was found guilty of malice murder but mentally ill in connection with the shooting death of Lee Woodcock and sentenced to life in prison under OCGA § 17-7-131.[1] He appeals

---

[1] The crime was committed on March 31, 2002. Appellant was indicted by a Tattnall County grand jury on October 21, 2002, on charges of malice murder and felony murder while

from the denial of his motions for new trial. For the reasons that follow, we affirm.

1. The evidence was uncontroverted that on the morning of March 31, 2002, appellant went to the victim's home where he hid in the bushes and waited. When the victim stepped outside, appellant fatally shot him three times with a 20 gauge shotgun. Appellant obtained the gun and shells the previous day from his father, claiming he needed the gun for his own protection.

Appellant asserted an insanity defense at trial. Evidence showed he had a history of mental illness dating from August 2001 and had been admitted and released from Georgia Regional Hospital on two occasions. The first, a ten-day voluntary commitment to Georgia Regional Hospital in August 2001, resulted in a diagnosis of Bipolar Type II and the development of a treatment plan. Appellant was involuntarily re-admitted to Georgia Regional Hospital in November 2001 after he made threats against his father. The affidavit and forms supporting the involuntary commitment were not admitted at trial, but the Durrence family attorney testified the commitment was based on a determination that appellant posed a risk of harm to himself or others, not that he was unable to determine right from wrong. See OCGA § 37-3-42 (emergency admission for person believed to be mentally ill). After a hearing before the Chatham County Probate Court, appellant was discharged to home in December 2001, again with a diagnosis of Bipolar Disorder Type II, after it was determined he was no longer a threat to himself or others and his judgment was not impaired. See OCGA § 37-3-1 (12.1). Because the court determined appellant was still a mentally ill person requiring involuntary treatment as an outpatient, however, the court ordered continued involuntary outpatient treatment through a Tattnall County mental health center where his medications could be monitored and he could receive professional counseling. See OCGA § 37-3-1 (12) (defining "mentally ill person requiring involuntary treatment"); OCGA § 37-3-81.1 (a) (2) (disposition of patient as outpatient); OCGA § 37-3-93 (court-ordered outpatient treatment).

The victim was shot on March 31, 2002. Appellant's father testified that on the day before the crime appellant was behaving in a normal manner and he noticed nothing unusual that would have

---

in the commission of an aggravated assault. Trial commenced on February 4, 2004, and on February 9, 2004, a jury found appellant guilty of malice murder but mentally ill. He was sentenced to life in prison on the murder count. The felony murder count was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993). Appellant filed a motion for new trial on February 26, 2004, which was amended on March 30, 2009 and April 6, 2009. The amended motion for new trial was denied on December 7, 2009. Appellant filed a premature notice of appeal on December 4, 2009. The case was docketed in this Court on December 23, 2009, and submitted for decision on the briefs.

caused him not to give appellant the gun and ammunition. Both appellant's father and sister testified that appellant came to his parents' home shortly after the crime and that although appellant was walking or pacing in circles, he frequently would do so and otherwise appeared fine. A psychologist who first examined appellant a year after the crime testified that based on her review of his mental health history and interviews with appellant and other sources, she believed that at the time of the crime he was experiencing a manic episode and did not know right from wrong.

Appellant challenges the sufficiency of the State's evidence and in a related enumeration of error contends the trial court erred by placing on him the burden of proving the affirmative defense of insanity. We consider these issues seriatim.

(a) Under Georgia law, a person is insane, and shall not be guilty of a crime, if at the time of the act, omission, or negligence constituting the crime, the person did not have mental capacity to distinguish between right and wrong in relation to the criminal act or acted because of a delusional compulsion which overmastered his will to resist committing the crime. OCGA §§ 16-3-2, 16-3-3; *Foster v. State*, 283 Ga. 47, 48 (656 SE2d 838) (2008). A defendant claiming insanity has the burden of proving the defense by a preponderance of the evidence. Id. Because Georgia law presumes every person is of sound mind and discretion, criminal trials begin with the rebuttable presumption that the defendant is sane and this presumption is evidence. OCGA § 16-2-3; *Gilbert v. State*, 235 Ga. 501, 501-502 (220 SE2d 262) (1975).

It is also true, however, that our law presumes the continued existence of a mental state once it is proved to exist. OCGA § 24-4-21; *Gilbert*, supra, 235 Ga. at 501-502. It is for this reason that where a defendant previously has been adjudicated insane, introduction into evidence of the insanity order raises a counter-presumption. *Durham v. State*, 239 Ga. 697 (1) (238 SE2d 334) (1977). In such cases, the burden shifts to the State to prove the defendant was sane at the time of the crimes. Id. The counter-presumption does not survive once the defendant is properly released from the hospital or institution, but instead the presumption of sanity is restored. Id.; *Nelson v. State*, 254 Ga. 611 (1) (331 SE2d 554) (1985); *Brown v. State*, 250 Ga. 66, 70-71 (295 SE2d 727) (1982).

Here, appellant contends the burden to prove his insanity at the time the crime was committed was improperly placed upon him because his prior involuntary commitment to Georgia Regional Hospital and subsequent discharge with an involuntary treatment order raised a presumption of insanity under OCGA § 24-4-21, thereby shifting the burden to the State to prove he was not insane at the time of the crime. The record, however, is devoid of any

evidence of a prior adjudication of insanity. Appellant was admitted to Georgia Regional Hospital on two occasions. Both times he was diagnosed with Bipolar Disorder and released, the first time without conditions and the second as an involuntary outpatient with treatment conditions. Bipolar Disorder is a mental illness or mental abnormality but is not the equivalent of legal insanity. See *Lawrence v. State*, 265 Ga. 310 (2) (454 SE2d 446) (1995); *Nelms v. State*, 255 Ga. 473, 475 (340 SE2d 1) (1986). Our statutes and case law make a clear distinction between being insane at the time of the crime and being mentally ill[2] or mentally retarded,[3] each requiring different forms of proof.[4] See *Salter v. State*, 257 Ga. 88, 89 (356 SE2d 196) (1987) (mental illness does not meet test of legal insanity); *Nelms*, supra, 255 Ga. at 475 (showing that person suffers from schizophrenia or other psychosis does not establish legal insanity); *Brown*, supra, 250 Ga. at 71 (admission to mental institution will not give rise to presumption of insanity absent adjudication of insanity); *Durham*, supra, 239 Ga. at 698 (1) (same); *Nelson*, supra, 254 Ga. at 613 (mere showing of a medical psychosis does not establish legal insanity); *Green v. State*, 197 Ga. App. 16 (1) (397 SE2d 590) (1990) (mental abnormality not equivalent to legal insanity). Appellant's status as an involuntary outpatient after his second release from Georgia Regional Hospital does not change the fact that there was no prior adjudication of insanity.

Because there was no prior adjudication of insanity giving rise to a presumption of insanity, the trial court correctly placed upon appellant the burden of proving by a preponderance of the evidence that he was insane at the time of the crime.[5]

(b) The burden of proof having properly been placed upon appellant, we find the jury's rejection of his insanity defense is

---

[2] "Mentally ill" means having a disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life. OCGA § 17-7-131 (a) (2).

[3] "Mentally retarded" means having significantly sub-average general intellectual functioning resulting in or associated with impairments in adaptive behavior that manifested during the developmental period. OCGA § 17-7-131 (a) (3).

[4] Recognizing these legal distinctions and their correlating similarities, OCGA § 17-7-131 (c) requires that the jury be instructed to consider all five verdict options set forth therein when a defense of insanity is raised. See *Foster*, supra, 283 Ga. at 49 (recognizing legal distinctions between insanity, mental illness and mental retardation).

[5] We find it necessary in reaching this conclusion to overrule *Butler v. State*, 252 Ga. 135 (311 SE2d 473) (1984), in which this Court erroneously equated an order of the probate court finding one to be mentally ill with an adjudication of insanity pursuant to OCGA § 16-3-2. In so holding, the Court failed to recognize the elemental differences between the showings required to establish the affirmative defense of insanity (whether the defendant could distinguish between right and wrong or suffered from a delusional compulsion) and mental illness (disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life).

supported by sufficient evidence. The trial began with the presumption of sanity, and while appellant presented lay and expert testimony to rebut the presumption, presumptions of sanity do not dissipate on the presentation of contrary evidence. OCGA § 16-2-3; *Durham*, supra, 239 Ga. at 699. In Georgia, jurors are free to reject the testimony of witnesses as to the sanity of the accused, and to instead rely on the presumption of sanity. Id. at 698-699. The evidence in this case thus authorized the finding that appellant knew right from wrong at the time of the crime, and appellant's mental illness, which was not the equivalent of legal insanity, did not require a verdict of not guilty by reason of insanity. See *Nelson*, supra, 254 Ga. at 613 (1).

Construing the evidence in a light most favorable to the verdict, we also find that a rational trier of fact could have found appellant guilty but mentally ill beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accordingly, the evidence in this case was sufficient to support the verdicts beyond a reasonable doubt, and the trial court did not err by failing to grant the motion for directed verdict.

2. Appellant contends he received ineffective assistance of trial counsel. In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), appellant "must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. [Cit.]" *White v. State*, 283 Ga. 566, 569 (4) (662 SE2d 131) (2008). We conclude appellant failed to make the requisite showings.

(a) Appellant contends trial counsel was ineffective for failing to object to the State's presentation of evidence establishing his guilt, arguing that such evidence was irrelevant and prejudicial in this prosecution because he admitted he shot the victim. The presentment of an insanity defense does not, however, negate the State's burden of proving each and every element of the charged crimes. Whether the defense offered is not guilty by reason of insanity or guilty but mentally ill, the prosecutor is

> not required to accede to [defendant's] contention that he was [insane or] guilty but mentally ill, nor [is] he precluded from arguing vigorously his position that [defendant is] guilty. The prosecutor [is] entitled to emphasize the evidence favorable to his contention, to discuss and draw inferences from factual matters in evidence relating to the credibility of witnesses, and to respond to points made in —

and issues omitted from — the defendant's closing argument. [Cit.]

*Spivey v. State*, 253 Ga. 187, 189 (319 SE2d 420) (1984). The evidence of appellant's guilt was relevant to the prosecution and the objection appellant contends should have been made would have been without merit. Counsel's failure to make a meritless objection does not constitute deficient performance. See *Martin v. State*, 281 Ga. 778 (3) (a) (642 SE2d 837) (2007).

(b) Appellant alleges trial counsel was ineffective by failing to object to the court's charge on the burden of proof with regard to the insanity defense. The trial court instructed the jury that appellant had entered a plea of not guilty by reason of insanity and that he bore the burden of proving this defense by a preponderance of the evidence. As discussed above, the burden of proving insanity was properly placed on appellant as he had not previously been adjudicated insane. See Division 1 (a), supra. He has failed to satisfy his burden under *Strickland* as to this ground.

3. Appellant's claim that he was denied the opportunity to testify because he was forced to take medication to be legally sane at trial is waived. His failure to raise an objection to his medical treatment before or during trial constitutes a forfeiture of his right to raise the issue on appeal.[6] See *Mullins v. State*, 270 Ga. 450 (3) (511 SE2d 165) (1999). See also *Riggins v. Nevada*, 504 U. S. 127 (112 SC 1810, 118 LE2d 479) (1992); *Lawrence v. State*, supra, 265 Ga. at 314 (3) (a) (defendant not entitled to have jury view him in unaltered, undrugged state where treatment with medication is "medically appropriate and, considering less intrusive alternatives, essential for the sake of the accused's own safety or the safety of others").

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 17, 2010.

*Hamilton & Maddox, Tina E. Maddox*, for appellant.
*Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.

---

[6] We note that consistent with our holding in *Lawrence*, the jury was made aware of the change in appellant's behavior as a result of his medications through witness testimony, and the jury charge correctly informed jurors that appellant was under the influence of medication during trial, his behavior during trial was conditioned by that medication, and the insanity defense was to be evaluated as to the time the alleged offenses were committed.