## A11A0190. KOLDEWEY v. THE STATE.

(714 SE2d 371)

DOYLE, Judge.

Matthew B. Koldewey appeals from a four-count conviction[1] for making terroristic threats, contending that the trial court erred by (1) denying his motion for a directed verdict because the evidence was insufficient to support a finding of guilt, and (2) shifting the burden of proof by incorrectly charging the jury on involuntary intoxication. For the reasons that follow, we affirm in part and reverse in part.

Construed in favor of the verdict,[2] the evidence shows that in January 2008, Koldewey, who was on probation and had been participating in a drug court rehabilitation program, told his mother that he had been having violent thoughts. His mother took him to Gateway Behavioral Health Services, a state-run facility that treats clients for mental health disorders and drug and alcohol addiction and where Koldewey had been evaluated previously. The mother explained to the intake nurse, Jo Miller, that Koldewey had been having suicidal and homicidal thoughts. Miller arranged for Julie Spores, a registered nurse, to conduct the intake interview. The intake interview was a diagnostic assessment done with walk-in patients such as Koldewey for the purpose of evaluating appropriate treatment.

During the intake interview with Spores, Koldewey grew angry and stated that he was going to choke Judge A. W.[3] (wringing his hands), and then he said, "no . . . he had a deer rifle with Judge [A. W.'s] name on it, and he was gonna kill her." Spores then approached Dale Tushman, a licensed clinical social worker acting as backup officer for the day, and asked her to sit in on the interview. When Tushman invited Koldewey to talk to her, he repeated that he "had strong hands" and was going to choke Judge A. W., and that "I have a rifle with a scope, and I can get in the bushes beside [Judge A. W.'s] house." Koldewey further stated that he "was going to set fire to Alpha House [a residential therapeutic community to which he was assigned by the drug court], and I'm going to burn down Alpha house and take out all the 40 men in it. . . . And I'm going to slit the throat of [C. W.]," an Alpha House counselor. Tushman explained that she needed to take Koldewey to Gateway's crisis unit, a secure unit designed for the protection of homicidal and suicidal clients. Koldewey went with her to the crisis unit, where Koldewey

---

[1] He was found guilty of six counts, two of which merged.

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[3] Judge A. W. was Koldewey's sentencing judge during his prior appearance in drug court.

was given oral medication, which he took with some hesitation, and was prepared for transfer to a state regional mental health hospital.

While in the crisis unit, Koldewey asked to use the telephone and called C. W., saying, "hey [C. W.], this is Matthew Koldewey. I'm on my way to Georgia Regional, but when I get out, whatever happens, happens." Koldewey then threatened to "beat up somebody" if police, instead of his mother, took him to the regional mental health hospital. Koldewey remained hostile, was further medicated, and eventually was transported by police to the hospital.

Koldewey was accused in a six-count indictment of making terroristic threats against Judge A. W. generally[4] (Counts 1 and 2) and as involving a judicial proceeding[5] (Counts 5 and 6), against C. W. (Count 3), and against Alpha House (Count 4). Following a jury trial, Koldewey was found guilty on all counts and, due to the merger of Counts 1 and 2, sentenced only on Counts 3 through 6 to a probated term of 15 years (with credit for 18 months already served in confinement). He now appeals.

1. Koldewey first challenges the sufficiency of the evidence to support the guilty verdict. When an appellate court reviews the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[6]

To prove the crime of terroristic threats as alleged in Counts 1 through 4, the State's burden was to show that Koldewey "threaten[ed] to commit any crime of violence . . . or to burn or damage property *with the purpose of terrorizing another* or of causing the evacuation of a building . . . or in reckless disregard of the risk of

---

[4] See OCGA § 16-11-37 (a).

[5] See OCGA § 16-10-32 (b).

[6] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

causing such terror or inconvenience."[7]

> The crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is *communicated to the victim with the intent to terrorize*. That the message was not directly communicated to the victim does not alone preclude a conviction where the threat is submitted in such a way as to support the inference that the speaker intended or expected it to be conveyed to the victim.[8]

On appeal, Koldewey contends that the evidence failed to show that he intended to terrorize the victims because his threatening statements were made for diagnostic purposes to a licensed nurse and mental health social worker at a behavioral health center. With respect to the threats made against Judge A. W. as alleged in Counts 1 and 2 of the indictment, we agree. There is no evidence that Koldewey made the threatening statements to anyone other than the mental health staff during an intake interview done for diagnostic purposes. He was taken to the center specifically because of his violent thoughts, which he had generally complained of to his parents, but he had avoided articulating any threat until speaking to staff. The intake nurse testified that during the intake interview, Koldewey stated that he did not want to hurt himself or others. While it is true that intent to terrorize need not be proven by direct evidence and may be inferred from the circumstances,[9] the circumstances here demand a finding that the purpose of Koldewey's threats against Judge A. W. was for diagnosis and treatment at a mental health facility and not for the purpose of terrorizing Judge A. W.[10]

Similarly, with respect to Counts 5 and 6, the State's burden was to show that Koldewey made the threats against Judge A. W. *"with*

---

[7] (Emphasis supplied.) OCGA § 16-11-37 (a).

[8] (Punctuation omitted; emphasis supplied and omitted.) *Stephens v. State*, 271 Ga. App. 509, 510 (610 SE2d 143) (2005).

[9] See *Jordan v. State*, 214 Ga. App. 346, 347 (447 SE2d 341) (1994) ("Direct evidence that the threats were made for the purpose of terrorizing another is not necessary if the circumstances surrounding the threats are sufficient for a jury to find the threats were made for such a purpose.") (punctuation omitted).

[10] See *Sidner v. State*, 304 Ga. App. 373, 375 (1) (696 SE2d 398) (2010) (threats made for purpose of securing help from police did not constitute offense of terroristic threats); *Jordan*, 214 Ga. App. at 347 (threats against supervisor made only to human resources staff for purposes of seeking a transfer were not made for purpose of terrorizing supervisor). Compare *Brown v. State*, 298 Ga. App. 545, 547-549 (680 SE2d 579) (2009) (defendant's threats against his wife and her mother were communicated to his lawyer with the intent that the lawyer communicate them to the victims in light of defendant's legal knowledge and inquiries as to the attorney-client privilege).

*the intent to hinder, delay, prevent, or dissuade [her] from"* attending a judicial proceeding or assisting in a prosecution or probation revocation, or participating in certain similar law enforcement proceedings.[11] For the same reasons outlined above, in light of the uncontroverted evidence showing that Koldewey's purpose in communicating the threat was to seek mental health evaluation and treatment, we conclude that the evidence failed to support the findings of guilt as to Counts 5 and 6.

With respect to the threat made against C. W. and Alpha House in Counts 3 and 4, our conclusion is different because Koldewey telephoned C. W., the director of Alpha House, and told him that after his release from the mental health hospital, "whatever happens, happens." This language, coupled with Koldewey's earlier specific articulation of how he would kill C. W., burn down Alpha House, and "take out" the men in it, are circumstances sufficient to support an inference that the telephone call was made with the intent to terrorize C. W. and Alpha House, or at least in reckless disregard of the risk of causing such terror.[12]

In light of these conclusions, the trial court did not err by denying Koldewey's motion for a directed verdict as to the threats to C. W. (Count 3) and Alpha House (Count 4). As to the remaining counts (Counts 1, 2, 5 and 6), we reverse those convictions based on insufficient evidence.

2. We now address the remaining enumerated error pertinent to Counts 3 and 4.

At the conclusion of the evidence,[13] the trial court gave the jury the following instruction, over Koldewey's timely objections:

> Now, ladies and gentlemen, a person shall not be found guilty of a crime when, at the time of the conduct constituting the crime, the person did not have sufficient mental capacity to distinguish between right and wrong in relation to the criminal act because of involuntary intoxication.

---

[11] (Emphasis supplied.) OCGA § 16-10-32 (b).

[12] See *Reeves v. State*, 288 Ga. App. 544, 545 (654 SE2d 449) (2007) (a threat of future violence, even over the telephone, against an absent third party is sufficient to support a conviction of terroristic threats). See also *In the Interest of K. J.*, 294 Ga. App. 155, 156 (668 SE2d 775) (2008) ("direct evidence that the threats were made for the purpose of terrorizing another is not necessary if the circumstances surrounding the threats are sufficient for a trier of fact to find the threats were made for such a purpose") (punctuation omitted); *Stephens*, 271 Ga. App. at 510 ("The crime of making terroristic threats focuses solely on the conduct of the accused. . . .").

[13] At trial, Koldewey presented expert testimony supporting a defense that due to his involuntary intoxication from a toxic combination of drugs that he had been prescribed by a treating physician, he lacked sufficient mental capacity to distinguish between right and wrong in relation to his conduct.

> Involuntary intoxication means intoxication caused by a consumption of a substance through excusable ignorance. *A defendant asserting this defense bears the burden of proving it by a preponderance of the evidence that he was mentally not responsible at the time of the crime.* If the defendant meets this burden, the State would then have the burden to disprove or negate that defense.

Koldewey, relying on the 1976 case of *State v. Moore*,[14] argues that giving the emphasized portion of this instruction improperly shifted the burden of proof to him. In *Moore*, the defendant argued that he was coerced into aiding an accomplice to armed robbery. At trial, the court instructed the jury that the burden of persuasion was on the defendant to prove his affirmative defense of coercion. On appeal, the Supreme Court of Georgia noted that "[h]istorically, the defendant carried this burden in asserting an affirmative defense," and it found no error in the *Moore* case.[15] Nevertheless, due to the law in the area having become unsettled and lacking uniformity, the Supreme Court held that, "henceforth charges which place any burden of persuasion upon the defendant in criminal cases shall not be given and such charges will be deemed erroneous and subject to reversal, absent harmless error and invited error."[16] This holding would seemingly end our inquiry and demand a reversal. However, the Supreme Court of Georgia has also approved trial courts' charges on insanity, a virtually identical affirmative defense,[17] that explicitly place the burden of proof as to that issue on the defendant.[18]

In doing so, the Supreme Court has noted that in Georgia, every

---

[14] 237 Ga. 269 (227 SE2d 241) (1976).

[15] Id. at 269-270 (1).

[16] Id. at 270 (1).

[17] A comparison of the two statutes shows that the only distinction is the cause of the lack of mental capacity. Compare OCGA § 16-3-2 with OCGA § 16-3-4 (a).

[18] See, e.g., *Durrence v. State*, 287 Ga. 213, 218 (2) (b) (695 SE2d 227) (2010) (stating, in the context of analyzing a claim of ineffective assistance of counsel, "[t]he trial court [properly] instructed the jury that appellant had entered a plea of not guilty by reason of insanity and that he bore the burden of proving this defense by a preponderance of the evidence"); *Hicks v. State*, 256 Ga. 715, 727 (18) (352 SE2d 762) (1987) (holding that the trial court did not err by charging the jury on insanity and placing the burden of proof as to that issue on the defendant). See also *Brannan v. State*, 275 Ga. 70, 83 (18) (561 SE2d 414) (2002) (jury instruction on the rebuttable presumption of sanity "is not unconstitutionally burden-shifting"); *Longshore v. State*, 242 Ga. 689, 691 (1) (251 SE2d 280) (1978) ("To overcome [the] presumption [of sanity] a defendant must show by the preponderance of the evidence that he was not criminally responsible at the time of the commission of the act."); *May v. State*, 287 Ga. App. 407, 409 (3) (651 SE2d 510) (2007) (approving recitation of pattern charge on presumption of sanity). Likewise, the pattern jury charge on the insanity defense includes language to the same effect: "The defendant has the burden of proving insanity by a preponderance of evidence." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 3.80.20 (4th ed. 2007).

person is rebuttably presumed to be "of sound mind and discretion."[19] Therefore, "criminal trials begin with the rebuttable presumption that the defendant is sane and this presumption is evidence."[20] Thus, unless there is a prior adjudication of insanity that gives rise to a presumption of insanity, it is proper for the trial court to place on a defendant raising an insanity defense "the burden of showing, by [a] preponderance of the evidence, that he was not mentally responsible at the time of the alleged crime."[21]

Like an insanity defense, the involuntary intoxication defense asserts that the defendant "did not have sufficient mental capacity to distinguish between right and wrong."[22] OCGA § 16-3-4 defines the involuntary intoxication defense as follows:

> (a) A person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of involuntary intoxication, *did not have sufficient mental capacity to distinguish between right and wrong*[23] in relation to such act.
>
> (b) Involuntary intoxication means intoxication caused by:
>
> (1) Consumption of a substance through excusable ignorance;[24] or
>
> (2) The coercion, fraud, artifice, or contrivance of another person. . . .

And Georgia cases have held that "a defendant asserting involuntary intoxication bears the burden of showing by a preponderance of the

---

[19] OCGA § 16-2-3.

[20] *Durrence*, 287 Ga. at 215 (1) (a).

[21] (Citations omitted.) *Durham v. State*, 239 Ga. 697, 698 (1) (238 SE2d 334) (1977). The constitutional validity of placing upon the defendant the burden of proving his insanity has been recognized by the United States Supreme Court. See *Patterson v. New York*, 432 U. S. 197, 210 (III) (97 SC 2319, 53 LE2d 281) (1977) ("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the non-existence of all affirmative defenses has never been constitutionally required."). It has also been recognized by Georgia courts. See *Durrence*, 287 Ga. at 216 (1) (a); *Boswell v. State*, 275 Ga. 689, 691 (2) (572 SE2d 565) (2002); *Lawrence v. State*, 265 Ga. 310, 312-313 (2) (454 SE2d 446) (1995); *Brown v. State*, 250 Ga. 66, 70 (2) (c) (295 SE2d 727) (1982).

[22] OCGA § 16-3-4 (a). Compare OCGA § 16-3-2 (defining the insanity defense as follows: "A person shall not be found guilty of a crime if, at the time of the act . . . constituting the crime, *the person did not have mental capacity to distinguish between right and wrong* in relation to such act") (emphasis supplied).

[23] (Emphasis supplied.)

[24] " 'Excusable ignorance' may include reliance upon a physician's prescription, at least where the defendant was ingesting the prescription in the quantity and manner directed by the physician." *Coats v. State*, 303 Ga. App. 818, 823, n. 3 (695 SE2d 285) (2010).

evidence[ ] that he was not mentally responsible at the time of the alleged crime."[25] Therefore, it is a correct statement of law that when raising a defense that one lacked sufficient mental capacity to distinguish between right and wrong in relation to such act, the defendant bears the burden of proof.[26]

Despite any apparent conflict with the bright-line rule in *State v. Moore*, the Supreme Court of Georgia has approved of jury instructions placing the burden of proof on the defendant to prove that he lacked the capacity to distinguish between right and wrong.[27] We decline to depart from this line of reasoning here.[28] And thus, we discern no reversible error.[29]

3. Koldewey's remaining enumerations are moot.[30] Because we reverse his conviction as to Counts 1, 2, 5, and 6 based on a failure of the evidence, double jeopardy bars retrial on those Counts.[31] The convictions on Counts 3 and 4 are affirmed.

*Judgment affirmed in part and reversed in part. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JULY 13, 2011 — 

*Robert L. Crowe*, for appellant.

*Jacquelyn L. Johnson, District Attorney, David A. Peterson, Assistant District Attorney*, for appellee.

---

[25] (Punctuation omitted.) *Stewart v. State*, 291 Ga. App. 846, 847 (663 SE2d 278) (2008). See *Rauschenberg v. State*, 161 Ga. App. 331, 332 (1) (291 SE2d 58) (1982).

[26] See *Stewart*, 291 Ga. App. at 847.

[27] See *Durrence*, 287 Ga. at 218 (2) (b); *Longshore*, 242 Ga. at 691 (1).

[28] We note that unlike the pattern jury charge on insanity, the pattern jury charge on voluntary intoxication merely tracks the language of the Code section and omits language referring to a burden of proof.

[29] See generally *State v. Johnson*, 280 Ga. 511, 513 (630 SE2d 377) (2006) ("A requested charge should be delivered if it is a correct statement of law that is pertinent and material to an issue in the case and not substantially covered by the charge actually given.") (punctuation omitted).

[30] We note that Koldewey did enumerate as error the admission of testimony from Van Merrell, a licensed practical nurse, about his mental health treatment. He argues that this violated OCGA § 24-9-21, which protects, inter alia, communications to certain specified mental health professionals (not including licensed practical nurses). However, that testimony went to Koldewey's alleged threat against Judge A. W. and it was essentially cumulative of other testimony from mental health workers not challenged on appeal. Therefore, we need not address that enumeration.

[31] See *Jones v. State*, 272 Ga. 900, 904 (4) (537 SE2d 80) (2000) (when a conviction is reversed due to insufficient evidence to support the verdict, the defendant cannot be retried without violating the Double Jeopardy Clause of the United States Constitution).